THE appellant filed his bill, setting np an entry of 2,275 acres of land, entered in the names of Benjamin Tope and James Patón, on-the 26th of Decembei 1782, and patented in the name of the appellant and Presley Gray, on a treasury warrant. The appellee relies on bis elder grant. The entry of the appellant calls as follows: “Joining and back of said Pope and Pa-ton’s entry of 5,000 acres, entered this date, and to run off from their back line southeastwardJy for quantity.”
Their entry made the same date, of 5,000 acres, calis “ to begin at the upper corner of • the preceding entry, next the river, and to run parallel to the river, up the same, and the same- distance therefrom, four miles ; then off, eastwardly, at right angles, for quantity.”
The preceding entry is in the name of John Roberts for 10,000 acres, and calls thus: “Beginning at the upper corner, next the river, of James Paton’s enti'y of 8,400 acres, and to run parallel with the river six miles, then off at right angles, eastwardly, for quan. tit}.”
James Paton’s entry of 8,400 acres, which immediately precedes the last, calls to lie “ about two miles up the first branch above the 18 mile creek, beginning at a tree marked J. P, and to run north five miles; then to extend off, at right angles, eastwardly, for quantity.”
The eighteen mile creek is a stream emptying itself into the Ohio, about eighteen miles above the falls of the river, and is shown to have been sufficiently not. torious, before and at the date of this entry, to be sustained as a good calí. The stream, now called Pa-ton’s creek, is about the same size, and discharges itself into the river, not very far above the mouth of eighteen mile; and although there are two or three drains between them, yet they are too inconsiderable, to fill the call of “ a branch,” in the entry; and as. Paton’s creek did not ácquire its name till shortly afterwards, no -reasonable doubt can exist, that it was *39 the water course intended by the locator, in the ex. pressions, “first branch above.”
The spot claimed by the appellant, as the begin. ning is about eighty poles, on a direct line, beyond the distance of two miles. It is evident, according to a series of decisions in this court, that the tree and its marks, are essential calls in the entry, and that they must be identified by proof. This call, however, is not without objections, and is very indefinite. For, suppose it be assumed, that the distance to the tree is to be taken on a direct line, and that eighty poles beyond that, would not be an unreasonable limit to the search; yet the entry does not tell us on which side of the stream it stands, so that both must be examined ; or how near to the stream, só that the search might be extended sume distance from its margin; and what is still more, it does not tell what kind of tree is marked, so that the enquirer must be subjected to an examination of all the trees of the forest.
But, waiving all these objections, without deciding whether they ought, or ought not to be fatal to the entry, we will proceed to examine the proof, as to the existence of the marks ; for it is evident, that if these objections can be removed, it must be by certain proof of the existence of the marks, as visible and easy to be discovered. It is evident, that a mulberry, which is claimed as the tree, existed with the marks there, some years after the survey wa3 made, and was ultimately washed up by the stream. A buckeye, with the same marks, still remains there ; but how old the marks appear, is not shown, -and no account of it exists, before the commencement of this suit. The entry, then, must rest on the mulberry. This.' no witness introduced, saw, before the making of the entry, nor for some months afterwárds. Nor is there any thing said, by any witness, as to the appearance of the letters, at that time, as to age. Saunders deposes, that' in the winter or fall 1782, Baton, with some others, went, as they said, a tour from Louisville up the river to Paton’s creek, and then went to the office to make entries there, and returned : That about the last of April or first of May following, he went up with Patón to the mouth of the same creek, and ascended it about two miles, and was then shown by Patón, as his beginning, the mulberry marked J. P. with visible let- *40 tors and easily discovered. Another witness, named M’Carty, introduced by the appellant, deposes, that lie attended the making of the survey on this entry, about the last of April or first of May, 1783. and then saw the trees ; but when he is cross-examined, in a second deposition, he expressly deposes, that “ the treé was marked at the timé of thésurvey, and there were several present, and he believes was marked J. P. by some persons present, which he names, as to which he is not certain.” And he further deposes, that he never saw any trees marked before the survey was made. From the testimony of this witness, compared w ith that of Saunders, it could not be told, whether this was before, or after Saunders saw the marks, and to reconcile the two, as the testimony of neither is impeached, it would be fair to presume, that it was before, and of course. Saunders saw the trees then marked. There is, however, one difficulty in this. The survey, as appears from a copy of the patent filed, bears date in September, 1783. This, however, may beprobably reconciled, by supposing, either that the survey was begun in the spring, and not finished till the fall, in which case, as in many other instances, it would have borne the latter date; or by supposing, that Saunders, as well as M’Carty, was mistaken in the month; or that Saunders saw one tree then, marked in the spring; but, at the execution of the survey in the fall, the party made and began, at a newly marked tree, to execute this survey. Taking the latter as the case, it follows, that the tree spoken of by Saunders, has not been shown and identified in this caiise, and that, as this is the only tree, which bids fair to be the one, at which the entry was made, it cannot be supported-, We would rather adopt this mode of reconciling thetestimony of two unimpeached witnesses, as both may be true. But suppose this mode inadmissible, and opposition between the statements of the two, must exist, there is nothing in this record, to inform us in' whose favor the scale should preponderate; and at best, it would be a case of too much doubt and uncertainty, to succeed against the legal estate of the appellee. It is certain, that the existence and identify of the marked tree, at the date of this entry, isas essential as its key-stone, and without it, the entry must fail, as was the case with Miller’s entry, in Miller’s heirs vs. *41 Haw’s heirs, Hard. 30, and divers entries since. We therefore conceive, that on this point only, without travelling further into the merits of this cause, the court below did right in refusing relief.
The decree must be affirmed with costs.