Desean MAYNES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–SC–000681–DG.

Supreme Court of Kentucky.

March 22, 2012.

Daniel T. Goyette, Louisville Metro Public Defender, Bruce P. Hackett, Chief Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, KY, for appellant.

Jack Conway, Attorney General of Kentucky, James Hays Lawson, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, for appellee.

Opinion of the Court by Justice ABRAMSON.

Kentucky Revised Statute (KRS) 23A.205 provides that persons convicted of a crime in Circuit Court shall pay court costs of $100.00. The statute allows court costs to be waived for "poor persons," as that term is defined in KRS 453.190(2), the *in forma pauperis* statute. KRS 31.110 provides that "needy persons" facing serious criminal charges are entitled to representation by an attorney at public expense. Should "needy" persons under the latter statute automatically be immune from the court costs imposed by KRS 23A.205? The Court of Appeals said they should not and upheld an order of the Jefferson Circuit Court imposing court costs on Desean Maynes. We accepted Maynes's motion for discretionary review to consider the interplay of these statutes, and we now affirm. Historically and under our current statutory scheme, there is no prohibition on imposition of court costs on a defendant who qualifies for the services of a public defender if the trial court determines under the circumstances of that particular case that the defendant is able to pay such costs.

### RELEVANT FACTS

In August 2009, nineteen-year-old Desean Maynes was involved with others in a residential burglary in Louisville. Because Maynes's role in the offense appeared to be minor, the Commonwealth, in exchange for Maynes's guilty plea, offered to reduce the second-degree burglary charge to third-degree and to recommend that a three-year sentence be diverted for five years. Maynes accepted that offer, and at the plea colloquy in October 2009 the trial court approved the agreement subject to the condition, among others, that within six months Maynes pay the

statutory court costs of $130.00 [1] to the circuit court clerk. Both orally at the hearing and later by written motion, Maynes objected to the imposition of costs. He argued that in his present circumstances—he had been unemployed for some time and had recently become a father—even the modest burden of court costs would work a hardship. He also contended that having found him in need of a public defender, the court was required under KRS 31.110, to waive costs. The trial court summarily rejected those arguments, and Maynes appealed.

Upholding the trial court's ruling, a unanimous panel of the Court of Appeals dismissed Maynes's hardship argument by noting that he had not presented any evidence that he was disabled or otherwise incapable of holding a job. The Court also held that when read in conjunction with KRS 23A.205, KRS 31.211, and KRS 453.190, KRS 31.110 does not create the blanket immunity from costs Maynes attributes to it. Before this Court, Maynes does not challenge the trial court's implicit finding that he is capable of working, but he contends that the Court of Appeals erred either by disregarding the plain language of KRS 31.110 or by misconstruing the court costs statute's own immunity provision. We disagree with both contentions.

### ANALYSIS

Statutory construction is a matter of law which requires *de novo* review by this Court. *Hearn v. Commonwealth*, 80 S.W.3d 432, 434 (Ky.2002) (citing *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth*, 983 S.W.2d 488 (Ky.1998). In construing statutes, our goal is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly

chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. *Osborne v. Commonwealth*, 185 S.W.3d 645 (Ky.2006). We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. *Hall v. Hospitality Resources, Inc.*, 276 S.W.3d 775 (Ky.2008); *Lewis v. Jackson Energy Cooperative Corporation*, 189 S.W.3d 87 (Ky.2005). We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. *Layne v. Newberg*, 841 S.W.2d 181 (Ky.1992). Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history or the canons of construction. *MPM Financial Group, Inc. v. Morton*, 289 S.W.3d 193 (Ky.2009).

### I. The Statutory Framework and Relevant History

We are confronted in this case with overlapping statutes pertaining to the rights of indigent defendants and the imposition of court costs. To understand how the different provisions relate, it is necessary to review briefly how they came to be.

### A. The *In Forma Pauperis* Statute

Kentucky has long recognized that poor persons may be allowed to prosecute a civil action without paying costs or fees and with the assistance of appointed counsel. As originally enacted in 1798, the *in forma pauperis* statute provided that

> every poor person who shall have cause of action against any person within this Commonwealth, shall have, by the discretion of the court before whom he

---

1. KRS 23A.206 and KRS 23A.2065 add $30 to the $100 costs required by KRS 23A.205.

would sue, writ or writs original, and writs of *subpoena*, according to the nature of his cause, nothing paying for the same; and that the said court shall direct their clerk to issue the necessary process, shall assign to him counsel learned in the laws, and appoint all other officers requisite and necessary to be had for the speed of the said suit to be had and made, who shall do their duties without any reward for their counsels, help and business in the same.

Act approved January 30, 1798—2 Litt. 39.

The direct predecessor of our current *in forma pauperis* statute, extending the status to defendants, was enacted at least as early as the 1850s, and appears at page 286 in the 1860 edition of the Revised Statutes for the Commonwealth compiled by Richard H. Stanton:

[A] poor person residing in this state may be allowed by a court to sue or defend a suit therein, without paying fees or cost, whereupon he shall have any counsel that the court may assign him, and from all officers all needful services and process, without any fees to them therefor, except what may be included in the costs recovered from the opposite party.

This statute became section 884 of Carroll's Kentucky Statutes (1894), which in turn, upon the 1942 adoption of the Kentucky Revised Statutes, became our current *in forma pauperis* statute, KRS 453.190. The statute now provides in relevant part that "[a] court shall allow a poor person residing in this state to file or defend any action or appeal therein without paying costs."

**B. The Right to Counsel and the Department of Public Advocacy Act**

Although theoretically the *in forma pauperis* statute was and is available to criminal defendants, and although it was sometimes invoked by such defendants seeking to be relieved of the costs of an appeal, *Braden v. Commonwealth*, 277 S.W.2d 7 (Ky.1955); *Clouse v. Glass Milling Co.*, 285 Ky. 690, 149 S.W.2d 9 (Ky. 1941); *Shipman v. Commonwealth*, 264 Ky. 15, 94 S.W.2d 32 (Ky.1936), historically the right of an indigent criminal defendant to appointed counsel at trial was usually asserted under Section 11 of our Kentucky Constitution. Indeed, this Court has noted that that right, like the rights to trial by jury and confrontation, "is a matter of procedural due process, ... not substantive criminal law. The responsibility for determining when and whether counsel must be appointed for a criminal defendant in Kentucky is a function of the judicial department, not the legislature." *Fraser v. Commonwealth*, 59 S.W.3d 448, 455–56 (Ky.2001) (citation omitted). By the late 1940s, Section 11 had been construed to require that a felony defendant appearing without counsel be advised of his right to counsel, and, upon an adequate showing of the defendant's inability to afford an attorney, that one be assigned to represent him. *Calhoun v. Commonwealth*, 301 Ky. 789, 193 S.W.2d 420 (1946); *Gholson v. Commonwealth*, 308 Ky. 82, 212 S.W.2d 537 (1948); *Hart v. Commonwealth*, 296 S.W.2d 212 (Ky.1956). *See also* Kentucky Rule of Criminal Procedure (RCr) 3.05(2).

Under the constitutional provision, the practice that developed was for representation to be provided to indigent felony defendants on an involuntary, uncompensated basis. *Fraser, supra* (describing the former practice and citing B. Deatherage, Comment, *The Uncompensated Appointed Counsel System: A Constitutional and Social Transgression*, 60 Ky. L.J. 710 (1971–72)). The trial court would assign the case to a member of the local bar, whose duties as an officer of the court were thought to include the *pro bono* representation of indigent defendants. *Id.* In

1963, however, the burdens on that system were markedly increased. In that year the United States Supreme Court held that the right to counsel provided by the Sixth Amendment to the federal Constitution applies to the states. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). That provision requires that not just indigent felony defendants, but any indigent defendant facing the possibility of incarceration, be represented by counsel at trial, *Gideon; Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and on a first appeal as of right, *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). This expansion of the class of eligible defendants, together with an increased population and rising crime rate, proved to be more than the appointed counsel system could bear. *See Bradshaw v. Ball*, 487 S.W.2d 294 (Ky.1972) (declaring the appointed counsel system unconstitutional).

In response, in 1972 the General Assembly passed House Bill 461, the Act creating this state's Department of Public Advocacy. Codified as KRS Chapter 31, the Department of Public Advocacy (DPA) Act provides:

> (1) A needy person who is being detained by a law enforcement officer, on suspicion of having committed, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is entitled:
>
> (a) to be represented by an attorney to the same extent as a person having his own counsel is so entitled; and
>
> (b) to be provided with the necessary services and facilities of representation including investigation and other preparation. *The courts in which the defendant is tried shall waive all costs.*

1972 Ky. Acts. Chapter 353, Section 11 (emphasis supplied); currently, with some amendment not pertinent here, KRS 31.110(1). "Serious crime" was defined to include felonies and "a misdemeanor or offense any penalty for which includes the possibility of confinement for 6 months or more or a fine of $500 or more." Section 10. That definition has since been amended, to comply with *Argersinger, supra*, to include "[a] misdemeanor or offense any penalty for which includes the possibility of confinement." KRS 31.100(4). "Needy person" was, and as pertinent here still is, defined as a person "who at the time his [or her] need is determined is unable to provide for the payment of an attorney and all other necessary expenses of representation." Section 10 and KRS 31.100(3).

Kentucky, of course, is not alone in seeking to abide by the federal constitutional standards. In the wake of *Gideon*, every state and the federal government enacted legislation providing in some way for the representation of indigent criminal defendants at public expense. Wayne D. Holly, *Rethinking the Sixth Amendment for the Indigent Criminal Defendant: Do Reimbursement Statutes Support Recognition of a Right to Counsel of Choice for the Indigent?* 64 Brook. L.Rev. 18.1 (1998). The expense is by no means trivial. According to its web site, the Department of Public Advocacy's 2011 budget included some $42,000,000 in state funds. Department of Public Advocacy, *Connecting for Justice*, Fiscal Year 2011 Annual Litigation Report 2 (2011), available at *http://dpa.ky.gov/dpapub.htm* (follow "DPA 2011 Annual Report" hyperlink under "Reports"). Not surprisingly, therefore, every state's indigent defense legislation includes provisions for the recoupment of defense costs from defendants who are able to contribute to them. Holly, *Rethinking the Sixth Amendment, supra*. The principal recoupment provisions of the 1972 Act ap-

peared in Section 12 and warrant quotation in full:

(1) The determination of whether a person covered by Section 11 is a needy person shall be deferred until his first appearance in court or in a suit for payment or reimbursement under Section 17, whichever occurs earlier. Thereafter, the court concerned shall determine, with respect to each proceeding, whether he is a needy person. However, nothing herein shall prevent appointment of counsel at the earliest necessary proceeding at which said person is entitled to counsel, upon declaration by said person that he is needy under the terms of this Act. In such event the person involved may be required to make reimbursement for the representation involved if he later is determined not a needy person under the terms of this Act.

(2) In determining whether a person is a needy person and in determining the extent of his inability to pay, the court concerned may consider such factors as income, property owned, outstanding obligations, and the number and ages of his dependents. Release on bail does not necessarily prevent him from being a needy person. In each case, the person, subject to the penalties for perjury, shall certify in writing or by other record such material factors relating to his ability to pay as the court prescribes.

(3) *To the extent that a person covered by Section 11 is able to provide* for an attorney, the other necessary services and facilities of representation, and *court costs, the court may order him to provide for their payment.*

(emphasis supplied).

Although they have evolved to some extent since 1972, subsections (1) and (2) just quoted still appear together as subsections (1) and (2) of KRS 31.120. In 2002, however-er, subsection (3) was moved from KRS 31.120 to a new recoupment section of the Chapter, KRS 31.211. That section now provides in pertinent part as follows:

(1) At arraignment, the court shall conduct a nonadversarial hearing to determine whether a person who has requested a public defender is able to pay a partial fee for legal representation, the other necessary services and facilities of representation, and court costs. The court shall order payment in an amount determined by the court and may order that the payment be made in a lump sum or by installment payments to recover money for representation provided under this chapter. This partial fee determination shall be made at each stage of the proceedings.

(2) If the partial fee, or any portion thereof, is not paid by the due date, the court's order is a civil judgment subject to collection under Civil Rule 69.03 and KRS Chapter 426.

(3) All moneys received by the public advocate from indigent defendants pursuant to subsection (1) of this section shall be credited to the public advocate fund of the county in which the trial is held if the county has a plan pursuant to KRS 31.060 or 31.065(1) which has been approved by the public advocate pursuant to KRS 31.050. Moneys credited to a county public advocate fund may be used only to support the public advocate program of that county.

(4) All moneys collected by the public advocate from indigent defendants pursuant to subsection (1) of this section in counties with a local public advocacy system established by the public advocate pursuant to KRS 31.065(2) shall be credited to the Department of Advocacy special trust and agency account to be used to support the state public advocacy system.

(5) If a person receives legal assistance or other benefits under this chapter to which he or she is not entitled or if a person receives legal assistance under this chapter and is financially able to pay for representation on the date the suit is brought, the public advocate, on behalf of the Commonwealth, shall recover, where practical, payment or reimbursement, as the case may be, from the person who received the legal assistance or his or her estate. Suit shall be brought within five (5) years after the date on which the aid was received.... (8) All moneys collected under this section shall be placed in a special trust and agency account for the Department of Public Advocacy, and the funds shall not lapse.

Thus, while KRS 31.110 has, from the inception of the public defender program in 1972, provided that "needy" defendants entitled to representation under the DPA Act shall be relieved of court costs as well as of attorney fees, from the beginning as well the legislation's recoupment provisions have recognized that the universe of criminal defendants is not divided into those who can pay in full and those who can pay nothing. Those provisions have made clear, rather, that "need" is a matter of degree and that defendants eligible for DPA representation may nevertheless be required to contribute to their defense or to pay court costs if the court determines that they are able to do so.

### C. The Court Costs Statute—KRS 23A.205

The third statute applicable to resolution of the issue before the Court is the aforementioned court costs statute, KRS 23A.205. Adopted in 1976 and effective as of January 2, 1978, the original KRS

23A.205 provided for court costs of $50.00 and in subsection (2) provided simply that costs "may be probated or suspended at the discretion of the court." Court costs were increased in 1984 and 1998 with courts retaining the authority to probate or suspend payment.[2] There was still no guidance within KRS 23A.205, however, on factors relevant for consideration in the exercise of that discretion. In 2002, the General Assembly adopted KRS 23A.205 in its present version, incorporating the "poor person" definition in the *in forma pauperis* statute and requiring consideration of not only the defendant's present circumstances but also his ability to pay "in the foreseeable future." The statute provides:

(1) Court costs for a criminal case in the Circuit Court shall be one hundred dollars ($100).

(2) *The taxation of court costs against a defendant, upon conviction in a case, shall be mandatory and shall not be subject to probation,* suspension, proration, deduction, *or other form of nonimposition* in the terms of a plea bargain or otherwise, *unless the court finds that the defendant is a poor person as defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future.*

(3) If the court finds that the defendant does not meet the standard articulated in subsection (2) of this section and that the defendant is nonetheless unable to pay the full amount of the courts costs and fees at the time of sentencing, then the court shall establish a show cause date by which time the court costs, fees, and fines shall be paid and may establish

---

**2.** The 1998 legislation contained an exception for KRS 346.185, the Crime Victims' Compensation Fund. The $20 fee assessed against convicted defendants for that fund was not subject to probation or suspension. HB 455, Sections 42–43 (1998).

an installment payment plan whereby the defendant pays the full amount of the court costs, fees, and fines to the circuit clerk in installments as established by the court. All court costs and fees under the installment plan shall be paid within one (1) year of the date of sentencing notwithstanding any remaining restitution or other monetary penalty owed by the defendant and arising out of the conviction. Installment payments will be applied first to court costs, then to restitution, then to fees, and then to fines.

KRS 23A.205 (emphasis supplied). The court costs statute adopts the following "poor person" definition in KRS 453.190(2):

A "poor person" means a person who is unable to pay the costs and fees of the proceeding in which he is involved without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing.

Thus the "poor person" standard in KRS 23A.205 is distinguishable from the "needy person" standard in KRS 31.100 because the latter focuses only on the inability "to provide for the payment of an attorney and all other necessary expenses of representation." Also, the KRS 31.211 recoupment provisions provide solely for a "present tense" determination while KRS 23A.205(2) directs the court to consider both the defendant's ability to pay at present and in "the foreseeable future."

## II. An Indigent Defendant's Liability For Court Costs

■ Having carefully considered the applicable statutes, we conclude that the trial court was authorized under Kentucky law to impose court costs despite Maynes's status as an indigent defendant entitled to the services of a public defender. While the directive in KRS 31.110(1) that the court "shall waive all costs" for such defendants seems mandatory at first blush, a full reading of the 1972 legislation and the current DPA Act belies that conclusion. From its inception through the present, the DPA Act has allowed for imposition of costs against those DPA-represented defendants who can afford to pay. Moreover, a person may qualify as "needy" under KRS 31.110 because he cannot afford the services of an attorney yet not be "poor" under KRS 23A.205 as it has existed since 2002 unless he is also unable to pay court costs without "depriving himself or his dependents of the necessities of life, including food, shelter or clothing." Finally, the KRS 23A.205 directive to consider not only the defendant's present ability to pay court costs but also his ability "in the foreseeable future" cannot be overlooked. The trial court's determination here that Maynes would be able to earn enough within the six months following his sentencing to afford the costs required by KRS 23A.205 is not clearly erroneous and, thus, the Court of Appeals correctly upheld the portion of Maynes's sentence imposing those costs.

Against this conclusion, Maynes refers us to *Edmonson v. Commonwealth*, 725 S.W.2d 595 (Ky.1987). In that off-cited opinion, this Court reversed an order imposing KRS 23A.205 costs and held that because KRS 31.110 addresses specifically the rights of indigent defendants accused of serious crimes, its provisions regarding the waiver of costs take precedence over KRS 23A.205's more general provision imposing costs. *Edmonson* was decided fifteen years before the court costs statute, KRS 23A.205, was amended to adopt the "poor person" standard for determining whether a defendant should be relieved, in whole or in part, of court costs. So, at the time *Edmonson* was decided, KRS Chapter 31 regarding DPA representation of

indigent defendants did contain the more specific legislation on the subject of indigent defendants' liability for court costs. That premise disappeared, however, with the 2002 adoption of the "poor person" standard in KRS 23A.205. Even so, it is apparent that the *Edmonson* Court did not address the then-existing provisions in KRS Chapter 31 that allowed for recoupment of court costs, namely former KRS 31.120(3). Nor has this Court addressed the present statutes' interplay in several recent cases where we have applied *Edmonson* and reversed orders imposing the statutory costs upon defendants-found to be "needy" for purposes of KRS Chapter 31. *Wiley v. Commonwealth,* 348 S.W.3d 570 (Ky.2010); *Travis v. Commonwealth,* 327 S.W.3d 456 (Ky.2010); *Ladriere v. Commonwealth,* 329 S.W.3d 278 (Ky.2010); *Jackson v. Commonwealth,* 2009 WL 3526653 (Ky. Oct. 29, 2009).

We need not tarry over whether those cases raised the specific statutory construction issue now before us because their factual distinctions from the present case support the conclusion that their outcomes would not have changed under a more searching analysis of the relevant statutes. In all of these cases, including *Edmonson,* the indigent defendant was sentenced to at least twenty years in prison. Thus, in none of those cases was the defendant's ability to pay made an issue, nor in any of them was the recoupment statute invoked. Without some reasonable basis for believing that the defendant can or will soon be able to pay, the imposition of court costs is indeed improper. Here, by contrast Maynes was to be released from custody pursuant to his diversion agreement, and so, unlike the defendants in the cases just referred to, he could reasonably be expected in the near future to acquire the means to pay the relatively modest court costs of $130.00.

Maynes advances an alternative rationale for his asserted immunity from KRS 23A.205 court costs. As we understand it, his argument may be summarized as follows: The "court costs" referred to in the recoupment statute, KRS 31.211 do not include the "court costs" imposed by KRS 23A.205, and thus, contrary to the Court of Appeals conclusion, the latter are not subject to recoupment. Rather, Maynes's liability for the KRS 23A.205 costs hinges on the interplay of that statute and KRS 31.110 which requires waiver of court costs for "needy persons" entitled to representation under KRS Chapter 31. *Edmonson* holds that KRS 31.110 is the more specific statute and therefore he is immune from the KRS 23A.205 costs. We reject this argument for several reasons.

As already noted, *Edmonson* dealt with the pre–2002 version of KRS 23A.205 when the statute simply allowed the court to exercise discretion in suspending or probating court costs. As of August 1, 2002, that statute mandates imposing court costs unless the defendant is a "poor person" as defined and does not have the ability to pay presently or in the foreseeable future. Consequently, *Edmonson* can no longer be the basis for resolving the conflict between the cost waiver directive in KRS 31.110(1) and the current court costs statute. Indeed, KRS 23A.205 is now the more recently enacted statute so under general principles of statutory construction it controls. *Bowling v. Ky. Dept. of Corrections,* 301 S.W.3d 478, 491 n. 4 (Ky.2010) (citing *Troxell v. Trammell,* 730 S.W.2d 525, 528 (Ky.1987) ("Our rule [ ] of statutory construction [is] that … a later statute is given effect over an earlier statute.")) KRS 23A.205 is also the more specific statute in its post–2002 form because it now refers to the imposition of court costs "upon conviction in a case." This is the time frame when court costs are logically imposed and it is distinct from the time

frames set forth in the KRS 31.110(1) cost waiver directive, *i.e.*, when the defendant is detained on suspicion of having committed, is under formal charge for or is being detained under a conviction of a serious crime. The first two references are to pre-indictment and pre-conviction stages while the third time frame is post-conviction, *e.g.*, a convicted defendant who is being detained pending a probation revocation proceeding. Only KRS 23A.205 addresses court costs "upon conviction" and sentencing. The more specific of two conflicting statutes controls the more general. *Commonwealth, Dept. of Corrections v. Engle*, 302 S.W.3d 60, 65 (Ky.2010). Thus, whether viewed in terms of the more specific statute or the more recent statute, KRS 23A.205 controls as to the imposition of court costs upon conviction.

Although the statutory conflict can be resolved without resort to the recoupment statute we are compelled to address Maynes's argument that the General Assembly meant to exclude the "court costs" imposed by KRS 23A.205 from the "court costs" referred to in KRS 31.211.[3] As noted above, KRS 31.211(1), the first subsection of the recoupment statute, provides that at each stage of the proceeding the court shall consider the defendant's means and, if appropriate, shall order the defendant to pay "a partial fee for legal representation, the other necessary services and facilities of representation, and court costs." In support of his assertion that "court costs" here cannot refer to the KRS 23A.205 "court costs," Maynes points to KRS 31.211(3) and (4), which, as noted, provide that "[a]ll monies received [or collected] by the public advocate from indigent defendants pursuant to subsection (1) of this section shall be credited" to the

county's public advocate fund or the Department of Public Advocacy's trust and agency account depending on the county's choice of advocacy system. Since the "court costs" imposed by KRS 23A.205 are paid to the circuit court clerk and are distributed pursuant to KRS 42.320, Maynes argues that they cannot be included among the "court costs" subsections (3) and (4) earmark for the DPA. We do not agree, however, that subsections (3) and (4) earmark the "court costs" referred to in subsection (1) of KRS 31.211 for the DPA. Rather, when those subsections refer to "all the monies received [or collected] by the public advocate," they mean monies paid "for legal representation [and/or] the other necessary services and facilities of representation." *i.e.*, the monies a private lawyer could expect to receive from a client. Court costs are not "received" or "collected" by the DPA. They are received by the court. Subsections (3) and (4), therefore, do not require the strained distinction Maynes would draw between "court costs" in the different statutes.

This conclusion is not altered by KRS 31.211(8), which, as Maynes notes, provides that "[a]ll moneys collected under this section shall be placed in a special trust and agency account for the Department of Public Advocacy, and the funds shall not lapse." Again, Maynes contends that "all moneys collected under this section" includes the "court costs" referred to in subsection (1), and so cannot be referring to the "court costs" imposed by KRS 23A.205. Again, we disagree.

On a first reading, subsection (8)'s reference to "all moneys collected under this section" seems odd, since subsections (3) and (4) have already accounted for "all

---

**3.** The legislature made no attempt to draw a distinction by specifically defining the term

"court costs" in either statute.

moneys collected" under subsection (1), the subsection addressing fee and cost assessments against indigent defendants in the original proceeding. Given our duty to harmonize statutes when we can and to avoid constructions that lead to absurd results, we believe that subsection (8) should not be understood as overriding subsections (3) and (4), but rather as referring to monies the Department of Public Advocacy collects pursuant to subsection (5). That subsection authorizes the DPA to bring a subsequent suit on behalf of the Commonwealth against former clients who were or have since become able "to pay for representation." As we read the statute, under subsection (8), all monies collected in such suits are to be placed in the DPA's trust and agency account. If this reading does not comport with its intent, we trust that the General Assembly will clarify the statute for us. Also, since subsection (5) contemplates the DPA's collection of representation fees and expenses, not court costs, subsection (8)'s reference to all such monies collected again does not entail the conflict with KRS 23A.205 that Maynes supposes.

Finally, our conclusion that liability for KRS 23A.205 court costs at the time of conviction is controlled by the terms of that statute is not inconsistent with our conclusion that the court costs in KRS Chapter 31 include KRS 23A.205 court costs. The statutes themselves substantiate this point. KRS 31.211(1) begins with a directive to the trial court to determine "at arraignment" whether a defendant has the ability to pay "a partial fee for legal representation, the other necessary services and facilities of representation, and court costs." This initial determination is not set in stone because the closing sentence of subsection (1) states that "[t]his partial fee determination shall be made at each stage of the proceedings." This "fee" language can be construed as a 'reference

back to the very same assessment required at arraignment and thus would include consideration of the fees for representation, services and facilities as well as "court costs." In KRS 23A.205 the General Assembly has said precisely how court costs are to be handled at that "stage of the proceedings," i.e., "upon conviction." So when the court addresses recoupment at the time of sentencing, as to court costs KRS 23A.205 controls. To the extent the "partial fee determination" is read as limited to literally the "fees" for DPA's legal representation and necessary services and facilities, this construction would lend some credence to Maynes's argument that the recoupment provision in KRS 31.211 does not include court costs. Assuming that is the intended meaning, the statutory construction issue becomes reconciling the directive in KRS 31.110 that courts shall "waive all costs" for needy persons entitled to KRS Chapter 31 representation with the mandatory language in KRS 23A.205. As we have concluded, the latter is the later enacted and the more specific statute and is thus clearly controlling. In short, even if the recoupment statute could be read to not include court costs, the result is the same. Maynes was subject to the imposition of court costs upon conviction under KRS 23A.205 and the trial court did not err in so ruling.

### CONCLUSION

In sum, unlike indigent litigants in general, who may be accorded relief from the expenses of litigation under the general *in forma pauperis* statute, indigent criminal defendants accused of serious crimes are entitled under the federal constitution to be represented by counsel both at trial and upon a first appeal as of right. To help ensure the provision of counsel to all such defendants, the General Assembly created the public defender system, whereby coun-

sel is liberally appointed at public expense to defendants making a *prima facie* showing of need. If, at the time of the initial application or subsequently, there is substantial reason to believe that the defendant, although in need of counsel, has the ability to contribute financially to his defense or to pay court costs, the appointment of counsel does not preclude an order requiring the defendant to pay according to his ability to do so. Upon a defendant's conviction, however, KRS 23A.205 requires imposition of court costs unless the defendant qualifies as a "poor person" and thus is unable to pay the costs presently or within the foreseeable future without depriving himself and his dependents of the basic necessities of life. Although initially deemed "needy" and allowed a public defender, Maynes subsequently entered a plea agreement whereby he was to be released from custody. The restoration of his freedom was also the restoration of his ability to work, and so justified the trial court's order that he pay the statutorily mandated court costs pursuant to KRS 23A.205. Since the Court of Appeals correctly so held, we hereby affirm its decision, *albeit* on a somewhat different construction of the relevant statutes.

All sitting. All concur.