KENTUCKY RIVER AUTHORITY; Phillip J. Shepherd; Charles W. Carr; Tom Dorman; Judge W. Neal Cassidy; Dr. Donald C. Haney; Martin Howard Lowry; Edward Foree; Greg Ginter; Thomas M. Jones; Ralph E. McClanahan; and Betty F. Whitaker, Appellants,

v.

CITY OF DANVILLE, Kentucky, Appellee.

No. 95–CA–000064–MR.

Court of Appeals of Kentucky.

Feb. 16, 1996.

Case Ordered Published by
Court of Appeals July 5, 1996.

Donald S. Dott, Jack B. Bates, Susan Rose Green, Jack B. Bates, Frankfort, for Appellants.

Edward D. Hays Danville, for Appellee.

Before LESTER, C.J.[1], and DYCHE and EMBERTON, JJ.

### OPINION

EMBERTON, Judge.

The appellants, Kentucky River Authority and its members, appeal from a judgment entered by the Boyle Circuit Court holding that the appellee, City of Danville, received no benefit from the Authority, and therefore, the Authority is. constitutionally precluded from collecting water use fees from Danville.

The controversy in this case arises from the Authority's interpretation of its enabling statute Ky.Rev.Stat. (KRS) 151.720, which was enacted in response to continuing problems and potential depletion of a valued natural resource, the Kentucky River. In 1990, the General Assembly enacted KRS 151.720 which mandates that the Authority protect the Kentucky River basin through watershed management. In 1993, the Authority enacted administrative regulations to implement the statutes including a two-tier fee schedule by which it charged the users of water from the river basin. Tier II fees are collected from entities withdrawing water directly from the main stem of the Kentucky River and are used by the Authority to finance

---

1. Chief Judge Lester concurred in this order prior to his resignation effective July 1, 1996. Release of this order was delayed by administrative handling.

specific capital construction projects designed to enhance the water available for the basin. Tier I fees, which Danville is designated to pay, apply to entities withdrawing water from anywhere in the Kentucky River basin, whether from groundwater or tributaries. These fees are used for projects benefiting the entire basin and are assessed at a uniform rate based upon use of the Kentucky River basin. They are not used for the general fund but only for Kentucky River basin management.

Danville withdraws no water directly from the Kentucky River but does from Lake Herrington on the Dix River which is a Kentucky River tributary. It also discharges water from its waste water treatment plant into a Kentucky River tributary.

■ Danville maintains that in order to assume jurisdiction over the Kentucky River basin the Authority must: (1) assume ownership of all U.S. Army Corps of Engineers property on or adjacent to the Kentucky River; and (2) publish a legal notice for ninety days of its intention to assume ownership. In 1982, when the Kentucky River Task Force was created in conjunction with the Natural Resources and Environmental Protection Cabinet, there was concern that the Corps would fail to maintain and operate the Kentucky River locks and dams. In such event, the legislature established a procedure, including a ninety-day notice requirement, for the Commonwealth to assume ownership. KRS 151.700(2).

■ There is no dispute, that pursuant to the original version of KRS 151.700(2), the Commonwealth did not assume ownership of the Kentucky River locks and dams. However, in 1990, the statute was amended by House Bill 920 and no longer requires ownership of the locks and dams to activate the authority of the Kentucky River Authority. It was the legislature's intent to enlarge the powers of the Authority and render it responsible for the conservation of the Kentucky River basin waters. Although criticized by the trial court as a practice subject to abuse, it is well established that the legislature is vested with the power to amend its statutes in a budget bill. *Commonwealth, ex. rel. Armstrong v. Collins,* Ky., 709

S.W.2d 437 (1986). Under current law, ownership of the locks and dams of the Kentucky River is not a statutory prerequisite to the implementation of the Authority's powers.

Danville apparently has a well functioning water system with adequate water supplies and leakage controls. It also has various programs in place to provide continuing conservation education. Arguing its self-sufficiency, Danville denies that it can benefit from the activities of the Authority and complains it should not pay the fees. The trial court agreed.

■ The parties have continually debated whether the fees assessed by the Authority are special assessments, taxes, or user fees. Obviously, if the fees are in effect taxes, the Authority is not a taxing district and any such delegation by the legislature would violate Sections 27 and 28 of the Kentucky Constitution. *Long Run Baptist Association, Inc. v. Louisville and Jefferson County Metropolitan Sewer District,* Ky. App., 775 S.W.2d 520 (1989); KRS 65.180. "A tax is universally defined as an enforced contribution to provide for the support of government, whereas a fee is a charge for a particular service." *Id.* at 522. Taxes are a means for the government to raise general revenue without regard to direct benefits which may inure to the payor or to the property taxed. *Krumpelman v. Louisville & Jefferson County Metropolitan Sewer District,* Ky., 314 S.W.2d 557, 561 (1958). The fees imposed by the Authority for the purpose of fulfilling the statutory mandates cannot be equated with taxes. The funds generated from the fees are to be used for the specific purpose of conserving and controlling the waters in the Kentucky River basin and are incidental to the statute.

■ The validity of special assessments and users fees depends on an analysis of the charge and the benefit received. Assessments and fees charged without a relationship to a benefit received by the payor are arbitrary and capricious and violate due process and the constitutional prohibition against the taking of private property without just compensation. *See Skidmore v. City of Elizabethtown,* Ky., 291 S.W.2d 3 (1956);

*Portwood v. Falls City Brewing Company,* Ky., 318 S.W.2d 535 (1958); *Woolsley v. Big Reedy Creek Watershed,* Ky., 383 S.W.2d 135 (1964). Sewers, lighting and street improvements are, if used by adjoining property owners, benefits which directly accrue to the real property. *Casey v. Richland County Council,* 282 S.C. 387, 320 S.E.2d 443 (1984), relied on by the trial court, involved a county surcharge on water and sewer. The plaintiff, however, received no water and sewer services from the city. Since no benefit was received by the plaintiff, the court held that the surcharge violated the state constitution and was, in fact, a tax. *Id.* 320 S.E.2d at 444.

Various fees exist and are used to implement programs deemed desirable by the Commonwealth. Pursuant to KRS 224.20–050, for instance, emission fees may be collected from entities emitting air pollutants and may be used to fund the Commonwealth's air quality program. Although there may be no direct or immediate benefit to the payor of such fees, the use of the air and the contamination of it are sufficient to justify imposition of the fee.

■ The fee in this case is based upon the actual use by the city of the Kentucky River water basin. Despite the city's contention that it does not need the services of the Authority, the General Assembly recognized a potential depletion of one of this state's most valued natural resources and took efforts to preserve the Kentucky River basin. The interest of the Commonwealth in protecting and regulating Eastern Kentucky's largest water resource is beyond question. An adequate and clean water source is essential to all it serves. In *Curtis v. Louisville and Jefferson County Metropolitan Sewer District,* Ky., 311 S.W.2d 378 (1958), the court rejected the contention that a statute was unconstitutional because it conclusively presumed that all land within a designated area would benefit from a surface drainage improvement.

> We think that in the case of a surface drainage improvement area, any property that geographically is a part of the watershed or drainage basin may properly be considered to be benefited by the project through the general improvement of condi-

tions of health, comfort and convenience in the area and the resulting general enhancement of values in the area.

*Id.* at 382.

Danville's primary contention is that it can, and has, taken care of the concerns of the General Assembly through its own efforts. While Danville's initiative is to be commended, the General Assembly believes that only state intervention and a uniform approach can assure the future of the Kentucky River basin. Perhaps, with the implementation of the new services provided by the Authority, Danville can divest itself of some of the responsibilities it has assumed. Preservation of the Kentucky River basin is a benefit which obviously accrues to all within its boundaries. We therefore hold to be clearly erroneous the trial court's finding that no benefit to the City of Danville exists. *Yount v. Calvert,* Ky.App., 826 S.W.2d 833 (1991).

The Tier I fees imposed by the Authority are designated for the payment of administrative costs while capital improvement projects are financed with Tier II fees. The language of KRS 151.720–730 provides that fees are to be collected from all facilities using the Kentucky River or its tributaries. In the 1994–96 Budget Bill, the General Assembly provided that Tier I fees shall be used for the establishment of an administrative staff for the Authority and contractual services for water supply and quality studies. Although contained in the Budget Bill, it is an effective and lawful amendment. *Armstrong, supra.*

■ We find no merit in Danville's contention that the Commonwealth cannot claim ownership to the waters of the Kentucky River because of the Supremacy Clause and the Commerce Clause of the United States Constitution. A state has the power to control and conserve its water resources, and unless Congress expressly invokes reserved rights or the navigation servitude, the state has authority to control its internal waters. *City of Trenton v. New Jersey,* 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); *California v. United States,* 438 U.S. 645, 662, 98 S.Ct. 2985, 2994, 57 L.Ed.2d 1018 (1978).

The judgment is reversed and the case is remanded for entry of a judgment consistent with this opinion, including the award of past fees owed with interest at the statutory rate. We find no basis, however, for the imposition of a penalty.

LESTER, C.J., concurs.

DYCHE, J., dissents.