RENDERED: OCTOBER 29, 2015
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000383-TG

GREATER CINCINNATI/NORTHERN                                    APPELLANTS
KENTUCKY APARTMENT ASSOCIATION, INC.,
FOX CHASE SOUTH, LLC, WESTERN
BOULDERS, LLC, VISTA WILDER, LLC,
VAIL, L.L.C., D/B/A ASPEN PINES APARTMENT
HOMES, GLEN HOLLOW APARTMENTS, LLC,
JOSLIN ENTERPRISES, LTD. CO., CHURCHILL
PROPERTY GROUP, LLC, COLD SPRING
HOUSING ASSOCIATES, LLC, AND VIANNA
GOINS


                    ON APPEAL FROM CAMPBELL CIRCUIT COURT
V.                  HONORABLE FRED A. STINE, V, JUDGE
                            NO. 13-CI-00956


CAMPBELL COUNTY FISCAL COURT,                                  APPELLEES
HON. STEVE PENDERY, IN HIS OFFICIAL
CAPACITY AS CAMPBELL COUNTY JUDGE
EXECUTIVE


## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

## AFFIRMING

Our 911 emergency telephone service has become one of the most critical of all local public services. It provides instant access for all Kentuckians in times of need. But dispatching these emergency calls cannot occur without cost. We hold that the fee imposed by the Campbell County Fiscal Court to fund this indispensable service is a constitutional and statutorily valid exercise of its authority.

## Background

Historically, the emergency 911 service in Campbell County—like much of the Commonwealth—was funded by imposing a monthly subscriber fee per landline telephone. Needless to say, the number of landline phones is decreasing rapidly. As such, the increase in wireless telephones and other technologies has rendered the landline subscriber fee an inadequate source of funding.

On August 7, 2013, the Campbell County Fiscal Court ("County") adopted Ordinance O-04-13 ("Ordinance"). The Ordinance replaced the landline subscriber charge with an annual service fee of $45.00 levied upon each occupied individual residential and commercial unit within Campbell County. The Greater Cincinnati/Northern Kentucky Apartment Association ("Association") filed a declaratory action in Campbell Circuit Court alleging that the Ordinance was an unconstitutional and invalid exercise of the County's authority. The trial court disagreed and ruled in favor of the County, thus affirming the Ordinance. The Association appealed that judgment and moved pursuant to CR 74.02 for an order transferring this case from the Court of Appeals to this Court. Given the statewide importance of this case, we granted transfer. Having reviewed the record and the law, we affirm the circuit court's ruling, but on different grounds.

## Analysis

Although the Association challenged the constitutionality of the Ordinance before the trial court, it has failed to raise a direct constitutional

2

argument before this Court. In any event, state constitutional provisions concerning local government's taxing authority are irrelevant here. As subsequently discussed, the Ordinance provides for a fee, not a tax. In accordance with the parties' arguments, we will limit our analysis to whether the Ordinance is a statutorily valid exercise of the County's authority.

### *Statutory Validity*

The Ordinance was adopted pursuant to KRS 65.760(3) which provides in pertinent part:

> The funds required by a city, county, or urban-county government to establish and operate 911 emergency telephone service, or to participate in joint service with other local governments, *may be obtained through the levy of any special tax, license, or fee not in conflict with the Constitution and statutes of this state.* The special tax, license, or fee may include a subscriber charge for 911 emergency telephone service that shall be levied on an individual exchange-line basis, limited to a maximum of twenty-five (25) exchange lines per account per government entity. (Emphasis added).

In construing statutes, we must give effect to the intent of the General Assembly. *Maynes v. Commonwealth,* 361 S.W.3d 922, 924 (Ky. 2012). "We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Id.* (citing *Osborne v. Commonwealth,* 185 S.W.3d 645 (Ky. 2006)).

It is undisputed that the funds collected by the County are not a form of special tax or license; rather, the Ordinance clearly provides that the charge is a service fee. The plain language of KRS 65.760(3) indicates that funds

3

required to establish and operate 911 telephone services "may be obtained through the levy of *any . . . fee* not in conflict with the Constitution and statutes of this state." (Emphasis added). There is no term provided in KRS 65.760(3) that qualifies the nature or scope of the term "fee." Thus, the only express limitation provided in the statute is that the fee not conflict with our state Constitution or statutes.

The Association argues that the fee imposed under the Ordinance constitutes an impermissible *user* fee that violates KRS 91A.510. That statute defines a user fee as a "fee or charge imposed by a local government on the user of a public service for the use of any particular service not also available from a nongovernmental provider." The Association contends that the Ordinance is invalid because it imposes a user fee that is not based on actual use of the benefit received. As such, the Association submits that the Ordinance levies an unauthorized flat-rate tax.

In support of their respective arguments, both parties cite extensive case law, none of which is directly on point. *See, e.g., Barber v. Comm'r of Revenue,* 674 S.W.2d 18 (Ky. App. 1984) (holding that a fire protection service charge was unconstitutional where enabling statute only authorized funding through use of property taxes); *Kentucky River Authority v. City of Danville,* 932 S.W.2d 374, 377 (Ky. App. 1996) ("The fee *in this case* is based upon the actual use by the city of the Kentucky River water basin.") (emphasis added). In fact, this is the first occasion upon which this Court has had the opportunity to interpret KRS 65.760(3) or KRS 91A.510. We recognize that we must construe all

4

applicable statutes together in an attempt to harmonize and give effect to the provisions of each. *See Commonwealth v. Phon*, 17 S.W.3d 106, 108 (Ky. 2000) (citations omitted). However, there is no need to harmonize the two statutes presented here. KRS 91A.510 is entirely inapplicable to the present issue.

The Association's argument is premised on the erroneous assumption that the term fee must mean user fee. To the contrary, "[v]arious fees exist and are used to implement programs deemed desirable by the Commonwealth." *Kentucky River Authority*, 932 S.W.2d at 377. In addition, KRS 65.760(3) was enacted in 1984, thus predating KRS 91A.510 by two years. Therefore, the statutory definition of user fee now embodied by KRS 91A.510 did not exist when KRS 65.760(3) was enacted.

Furthermore, the subsequent enactment of KRS 91A.510 did not modify or qualify the term fee included in KRS 65.760(3). It is critical to note that these statutes appear in entirely different Chapters of the KRS and contain no references or citations to each other. Moreover, while KRS 91A.510 is a general provision, KRS 65.760(3) is a specific provision that expressly authorizes the use of fees to fund 911 emergency telephone services. *Cf. Long Run Baptist Ass'n, Inc. v. Louisville and Jefferson County Metropolitan Sewer District*, 775 S.W.2d 520, 523 (Ky. App. 1989) ("since Chapter 76 clearly gives MSD express authority to impose a service charge . . . we affirm the trial court's ruling that the charge is not a tax."). Similarly, KRS 65.760(3) demonstrates the General Assembly's specific intent to permit local governments to fund 911 telephone

5

services through the imposition of fees. It is also clear that nothing in that provision requires that the fee be based on use.

Accordingly, we need not analyze whether the fee imposed by the Ordinance is a valid user fee. However, this does not mean that the unqualified term "fee" used in KRS 65.760(3) is unencumbered by reason or restraint. While analogy to cases discussing user fees, service charges, or similar forms of statutory assessments may prove instructive, our analysis is not dictated by KRS 91A.510 or any Kentucky decision interpreting statutes that are not at issue here. As a matter of first impression, the following analysis applies only to the nature and scope of fees authorized by KRS 65.760(3).

### Fees Authorized Under KRS 65.760(3)

Fees authorized by KRS 65.760 must bear some reasonable relationship to the benefit received. This nexus is similar, but not necessarily identical, to that required by other statutory assessments, charges, and fees. *See Kentucky River Authority,* 932 S.W.2d at 376 ("The validity of special fee assessments and users fees depends on an analysis of the charge and the benefits received."); *Curtis v. Louisville and Jefferson County Metropolitan Sewer District,* 311 S.W.2d 378, 382 (Ky. 1958) (affirming property assessment that funded surface drainage project due to the "general improvement of conditions of health, comfort and convenience in the area . . . .)."

Here, the 911 emergency service fee is levied upon *occupied* residential and commercial properties. In the narrow context of KRS 65.760(3), occupied

6

properties are an exceedingly logical and practical object of the fee revenue authorized by that provision. Common sense dictates that Campbell County residents engaged in either labor or leisure spend a significant amount of their time at residential and commercial properties located within Campbell County. It naturally follows that demand for this 911 emergency telephone service derives significantly from residents' occupation and use of those properties. We must keep ever in mind that these are safety and life saving services. Fire protection, ambulance assistance, law enforcement, and other first responders are all critical to the well being of people who occupy properties covered by the ordinance in question.

While the scope of benefits received from the 911 emergency telephone service is incapable of precise measure, it is uncontroverted that all citizens benefit from that service. *Cf. Long Run Baptist,* 775 S.W.2d at 524 (affirming service charge where the court determined that all property owners benefited from the service rendered). To assess payment upon only those citizens actually telephoning 911 is not, nor has it ever been, the policy of our counties or our Commonwealth.

Even the old landline fee expressly outlined in KRS 65.760 would offend the Association's overly restrictive interpretation requiring actual use of 911 telephone services. In fact, a system that is based entirely on actual use would be insufficient to sustain this service. Fortunately, many, if not most Kentuckians go through life and never encounter an emergency requiring the use of the 911 service. Thus, accepting the Association's interpretation of the

word "fee" provided in KRS 65.760 to mean "user fee" would require this Court to presume that the General Assembly intended an unpalatable and absurd result. This we cannot do. *See Maynes,* 361 S.W.3d at 924.

We must clarify that the nexus required to sustain a fee imposed under KRS 65.760(3) need not necessarily be direct. Rather, a fee that bears a reasonable relationship to the benefit received is sufficient. This approach comports with the General Assembly's specific intent to provide a functional system of fee based funding for one of the most vital services offered by our local governments. Therefore, we hold that the fee imposed by the County to fund this indispensable service is a constitutional and statutorily valid exercise of its authority.

## **Conclusion**

For the foregoing reasons, we hereby affirm the judgment of the Campbell Circuit Court.

All sitting. Abramson, Barber, Keller, and Noble, JJ., concur. Venters, J., dissents by separate opinion in which Minton, C.J., joins.

VENTERS, J., DISSENTING: I respectfully dissent. With candor only judges can fully appreciate, Counsel for the Campbell County Fiscal Court (Campbell County) acknowledged in his oral argument before this Court that fitting the "service fee" created by Ordinance O-04-13 within the available statutory framework was like trying to drive a square peg into a round hole. The majority has opted, for better or worse, to chisel off the corners of the square peg so that what is in reality a flat-rate tax on real estate can be

jammed into the round hole provided by statute for service fees. The better approach would be to call out the so-called "service fee" for what it is: a tax on real property ownership. The so-called "service fee" fits within none of the criteria recognized for the imposition of a governmental fee and bears all the hallmarks of a tax. And, because it is a tax on property that is not assessed on an *ad valorem* basis, it violates Section 174 of the Kentucky Constitution.

A major premise of the majority opinion is that the ordinance does not impose a "user fee" as defined in KRS 91A.510, but is instead some other kind of "fee." That will come as news to Appellee, Campbell County, since it argues in its brief that "[t]he Ordinance does not create a 'Property Charge,' *but a valid user fee that is in harmony with KRS 91A.510-530.*" (emphasis added.) Campbell County also says in its brief that it "chose to replace the Subscriber Charge [of its former Ordinance] *with a user fee* which is one of four ways for funding the 911 service." (emphasis added.) Appellee's entire argument is predicated upon their claim that their 911 "service fee" is valid because it is a "user fee." However, calling something a "user fee" does not make it one.

## A. The "service fee" assessed under Ordinance O-04-13 is not a "fee."

Fees properly assessed by governmental entities are characterized as either regulatory and license fees, or user fees. I am not aware of any other kind of fee. Regulatory and license fees are paid by those who choose to engage in a state-regulated activity. Often, but not necessarily, the activity is commercial in nature, like engaging in a licensed profession or working with a

9

regulated material. Other regulatory license fees are imposed upon those who choose to participate in regulated recreational activities, like hunting and boating. 84 C.J.S. *Taxation* § 3 (2015) ("A 'regulatory fee' is an imposition that funds a regulatory program. Regulatory fees are authorized by the state's police power to regulate particular businesses or activities and serve regulatory purposes[.]") (internal citations omitted). *See Klein v. Flanery*, 439 S.W.3d 107, 114 n.6 (Ky. 2014) ("[A] 'tax' in the strict sense of monies levied to meet the general expenses of government has been distinguished in a variety of contexts from more particularized exactions, such as fines, user fees—tolls, for example—infrastructure assessments, or regulatory fees[.]")

Campbell County's 911 emergency service is not a regulatory program; it does not police the practice of any commercial or recreational activities. Annual payment of the assessed fee does not entitle the fee-payers to participate in a regulated profession or activity. Therefore, by definition, the Campbell County 911 "service fee" is not a regulatory fee.

The other category of government fees is a user fee. That is what Appellees claim to have created in Ordinance O-04-13. A "user fee" is a fee or charge "imposed by a local government on the user of a public service *for* the use of any particular service not also available from a nongovernmental provider." KRS 91A.510 (emphasis added). Payment of the "user fee" entitles the payer to use the particular service. That is, after all, the effect of the word "for" in the statutory definition. The fee is exchanged *for* the right to use the service. Typical examples of user fees are toll bridge fares and court costs, but

10

also included are things like the admission fee to a government-owned facility such as a public park or swimming pool. As reported in *Corpus Juris Secundum*, "A true fee benefits the party paying the fee in a manner not shared by other members of society." 84 C.J.S. *Taxation* § 3.

Our case law teaches that the constitutional "validity of special assessments and users fees depends on an analysis of the charge and the benefit received." *Kentucky River Authority v. City of Danville*, 932 S.W.2d 374, 376 (Ky. App. 1996). "Assessments and fees charged without a relationship to a benefit received by the payor are arbitrary and capricious and violate due process and the constitutional prohibition against the taking of private property without just compensation." *Id.* (citations omitted).

Appellees concede what the Majority asserts: "[I]t is uncontroverted that all citizens benefit from the [911] service." Of course they do — access to 911 emergency service is universally available to everyone in the community regardless of whether they own real estate and pay the "service fee." It equally serves pedestrians injured in vehicular accidents; persons threatened by domestic violence; victims of crime; anyone that needs an emergency medical response. Landowners paying the fee get no benefit not otherwise available to everyone. There is no relationship between the fee charged and the benefit received. Consequently, the "service fee" cannot be justified as a "user fee."

Being neither a regulatory fee nor a user fee, the "service fee" created by Ordinance O-04-13 is exactly what it appears to be: it is a tax. There is nothing wrong or illegal about taxing real estate owners to pay for government

11

services at a rate disproportionate to the benefit they receive. That is quite common; it is generally accepted, and even expected. That is how Kentuckians pay for their school systems and public libraries; property taxes also provide the general funding for running city and county governments. Paying for 911 service with a tax on real estate would be entirely appropriate provided it was done in compliance with Section 174 of the Kentucky Constitution, which provides: "All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this Constitution."

**B. Ordinance O-04-13 imposes a flat-rate tax on property.**

The "service fee" described in Ordinance O-04-13 has none of the attributes of a legitimate fee. Moreover, it has all of the indicia of a tax. *Dickson v. Jefferson County Board of Education*, 225 S.W.2d 672, 675 (Ky. 1949) provides:

> There is a marked difference between a fee in its true concept and a tax. As said in 51 Am.Jur., Fees, Section 12:
>
> 'The distinction between a fee and a tax is one that is not always observed with nicety in judicial decisions, but any payment exacted by the state or its municipal subdivisions as a contribution toward the cost of maintaining governmental functions, where the special benefits derived from their performance is merged in the general benefit, is a tax.'
>
> On the other hand, a fee is generally regarded as a charge for some particular service . . . . [T]he Legislature has the power to impose fees for official duties performed by county officers and to direct that the fees be paid into the State Treasury.

We noted in *Klein* that "[t]he classic 'tax' is 'imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community[.]'" 436 S.W.3d at 114 n.6

12

(citation omitted). As described in *Klein,* the "service fee" imposed by Ordinance O-04-13 is a tax.

Not only does Campbell County's annual "service fee" for 911 service look and feel like a tax, it is actually assessed, billed, and collected as a tax. Just like any other tax on real estate, payers liable for the so-called "service fee" are identified by the Campbell County Property Valuation Administrator, which is Kentucky's tax assessor. The charge is placed on the property tax bills by the county clerk in the performance of her duty under KRS 133.220(2) to prepare a bill showing the taxpayer "the total amount of taxes due the state, county, school district, and any other taxing district for which the sheriff collects taxes." Then, the "service fee" is collected by the sheriff performing his duty as the county tax collector. The 911 service fee is assessed by the tax assessor, billed by the tax billing office, and collected by the tax collector.

In *City of Bromley v. Smith,* 149 S.W.3d 403 (Ky. 2004), this Court did not flinch when we were confronted with a flat-rate assessment on real property in Kenton County to pay for "life squad and other nonfire-related emergency services." *Id.* at 404. Despite the unquestioned value of the services provided to the citizens, we unanimously struck down the ordinance because it violated Section 174 of the Kentucky Constitution. *City of Bromley* holds:

> The annual flat-rate tax assessed per unit of real property and imposed for life squad purposes is not authorized under the Kentucky Constitution in the form that has been chosen by the City. In Kentucky, local real property taxes must be ad valorem, that is, based on assessed value. The term "ad valorem" literally means "according to worth." A flat tax is unrelated to value. As

13

correctly observed in *Barber*,[1] other than special assessments for municipal improvements and user charges for the provision of measurable services such as waste collection and sewer service, charges that may be based in part on the amount of waste or water consumption which could be reasonably calculated to burden the system, all property taxes must be based on assessed value or ad valorem. A flat-rate life squad tax is not based on value, and it cannot be deemed to be either a license fee, special assessment or user fee. The taxes are of a type that is not recognized by Kentucky law. Consequently, they are invalid and unconstitutional. It is of interest to note that the legislature has specified an ad valorem tax as a method of financing emergency ambulance services in KRS 75.040.

*Id.* at 405-406 (emphasis added).

In *Barber v. Commissioner of Revenue*, 674 S.W.2d 18, 20 (Ky. App. 1984), the City of Silver Grove (which is in Campbell County) attempted to levy a "fire protection service charge," which was in effect a one-time flat-rate tax on occupied property. The ordinance provided that the assessment would be added to the property owner's *ad valorem* tax bill. The Court of Appeals struck the ordinance as an unlawful tax on real estate, stating: "The proper way [to fund such services] is to charge all real and personal property to be benefited by the fire protection with a rate times *the assessed value of the property.*" *Id.* at 21 (emphasis added). The assessment used to fund such services was thus held to be an illegal flat-rate tax; the circumstances here are identical to the *Barber* case, and we should follow the cogent assessment of the issue as charted in that decision.

---

[1] *Barber v. Comm'r of Revenue*, 674 S.W.2d 18 (Ky. App. 1984).

14

## CONCLUSION

The "service fee" involved here has none of the attributes of a legitimate regulatory fee or user fee. When something looks like a duck, walks like a duck, and quacks like a duck, we can be certain of one thing: it *is* a duck. The Campbell County 911 "service fee" looks like a tax, it is assessed like a tax, and it is collected like a tax. It is a tax. Driving square pegs into round holes is bad carpentry; skirting the Kentucky Constitution by calling a flat-rate tax on real estate a "service fee" is bad law.

KRS 67.760 permits the Campbell County Fiscal Court to finance its 911 emergency system by any of the following ways: "the levy of any special tax, license, or fee not in conflict with the Constitution and statutes of this state." Campbell County's chosen method of funding 911 emergency service violates KRS 67.760 because it conflicts with the Constitution. It is a tax imposed on real estate, and just like the taxes imposed in *City of Bromley* and *Barber*, it should be stricken because it violates the *ad valorem* requirement of Section 174 of the Constitution.

Our role in these matters is not to whittle out a quick fix so that an invaluable public service can be maintained without exposing local officials to the unpleasant business of creating or increasing a tax. This Court's function in the grand scheme of things is to point out the legal infirmity of the matter so that the legislative and executive branches of state and local governments can craft enduring solutions that protect, not only invaluable public benefits like 911 emergency services, but also the integrity of the law itself. Securing

15

essential public services does not require citizens or political subdivisions to drive square pegs into round holes.

Therefore, I respectfully dissent. Minton, C.J., joins.

COUNSEL FOR APPELLANTS:

Richard L. Norton
Erica Lynn Horn
Jeffrey Jay Greenberger
Timothy Joseph Eifler
Stephen A. Sherman
Madonna E. Schueler


COUNSEL FOR APPELLEES:

Steven J. Franzen
Robert Edward List
Thomas Edison Edge