OPINION OF THE COURT BY JUSTICE CUNNINGHAM
Our 911 emergency telephone service has become one of the most critical of all local public services. It provides instant access for all Kentuckians in times of need. But dispatching these emergency calls cannot occur without cost. We hold that the fee imposed by the Campbell County Fiscal Court to fund this indispensable service is a constitutional and statutorily valid exercise of its authority.

Background

Historically, the emergency 911 service in Campbell County — like much of the Commonwealth — was funded by imposing a monthly subscriber fee per landline telephone. Needless to say, the number of landline phones is decreasing rapidly. As such, the increase in.wireless telephones and other technologies has rendered the landline subscriber fee an inadequate source of funding.
On August 7, 2013, the Campbell County Fiscal Court (“Count/’) adopted Ordinance 0-04-13 (“Ordinance”). The Ordinance replaced the landline subscriber charge with an annual service fee of $45.00 levied upon each occupied individual residential and commercial unit within Campbell County. ■ -The Greater Cincinnati/Northern Kentucky Apartment Association (“Association”) filed a declaratory action in Campbell Circuit Court alleging that the Ordinance was an unconstitutional and invalid exercise of the County’s authority. The trial court disagreed. and ruled in favor of the County, thus affirming the Ordinance. The Association appealed that judgment and moved pursuant to CR 74.02 for an order transferring this case from the Court of Appeals to this Court. Given the statewide importance of this case, we granted transfer. Having reviewed the[1] record and the law, we affirm the circuit court’s ruling, but on different grounds.

Analysis

Although the Association challenged the constitutionality of the Ordinance before the trial court, it has failed to raise a direct constitutional argument before this Court. In any event, state constitutional provisions concerning local government’s taxing authority are irrelevant here. As subsequently discussed, the Ordinance provides for a fee, not a tax. In accordance with the parties’ arguments, we will limit our analysis to whether the Ordinance is a statutorily valid exercise of the County’s authority.

Statutory Validity

The Ordinance was adopted pursuant to KRS 65.760(3) which provides in pertinent part:
The funds required by a city, county, or urban-county government to establish and operate'911 emergency telephone service, or to participaté' in joint' service with other local governments, may be obtained through the levy of any special tax, license, or fee not in conflict with *605 the Constitution and statutes of this state. The special tax, license, or fee may include a subscriber charge for 911 emergency telephone service that shall be levied on an individual exchange-line basis, limited to a maximum of twenty-five (25) exchange lines per account per government entity. (Emphasis added).
In construing statutes, we must give effect to the intent of the General Assembly. Maynes v. Commonwealth, 361 S.W.3d 922, 924 (Ky.2012). “We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration,” Id. (citing Osborne v. Commonwealth, 185 S.W.3d 645 (Ky.2006)).
It is undisputed that the funds collected by the County are not a form of special tax or license; rather, the Ordinance clearly provides that the charge is a service fee. The plain language of KRS 65.760(3) indicates that funds required to establish and operate 911 telephone services “may be obtained through the levy of any ... fee not in conflict with the Constitution .and statutes of this state.” (Emphasis added). There is no term provided in KRS 65.760(3) that qualifies the nature or scope of the term “fee.” Thus, the only express limitation provided in the statute is that, the fee not conflict with our state Constitution or statutes.
The Association argues that the fee imposed under the Ordinance constitutes an impermissible user fee that violates KRS 91A.510. That statute defines a user fee' as a “fee or charge imposed by a local government on the user of a public service for the use of any particular service not also available from a nongovernmental provider.” The Association contends that the Ordinance is invalid because-it imposes a user fee that is not based on actual use of the benefit received. As such, the Association submits that the Ordinance levies an unauthorized flat-rate tax.
In support of their respective arguments, both parties cite extensive case law, none of which is directly on point. See; e.g., Barber v. Comm’r of Revenue, 674 S.W.2d 18 (Ky.App.1984) (holding that a fire protection service charge was unconstitutional where enabling statute only authorized funding through use of property taxes); Kentucky River Authority v. City of Danville, 932 S.W.2d 374, 377 (Ky.App.1996) (“The fee in this case is based upon the actual use by the city of the Kentucky River water basin.”) (emphasis added). In fact, this is the first occasion upon which this Court has had thé opportunity to interpret KRS 65.760(3) or KRS 91A.510. We recognize that we must construe all applicable statutes together in an attempt to harmonize and give effect to the provisions of each. See Commonwealth v. Phon, 17 S.W.3d 106, 108 (Ky.2000) (citations omitted). However, there is no need to harmonize the. two statutes presented here. KRS 91A.510 is entirely inapplicable to the present, issue.
The Association’s argument is premised on the erroneous assumption that the term fee must mean user fee. To the contrary, “[v]arious fees exist and are used to implement programs deemed desirable by the Commonwealth.” Kentucky River Authority, 932 S.W.2d at 377. In addition, KRS 65.760(3) was enacted in 1984, thus predating KRS 91A.510 by two years. Therefore, the statutory definition of user fee now embodied by. KRS 91A.510 did not exist when KRS 65.760(3) wa^ enacted.
Furthermore, the subsequent enactment of KRS 91A.510 did not modify or qualify the term fee-included in KRS 65.760(3). It is critical to note that these statutes appear in-entirely different Chapters of the KRS and contain no references or citations *606 to each other. Moreover, while KRS 91A.510 is a general provision, KRS 65.760(3) is a specific provision that expressly-authorizes the use of fees to fund 911 emergency telephone services, Cf. Long Run Baptist Ass’n, Inc. v. Louisville and Jefferson County Metropolitan Sender District, 775 S.W.2d 520, 523 (Ky.App.1989) (“since Chapter 76 clearly gives MSD express authority to impose a service charge ... we affirm the trial court’s ruling 'that the charge is not a tax.”). Similarly, KRS 65.760(3) demonstrates the General Assembly’s specific intent to permit- local governments to fund 911 telephone services through the imposition of fees. It is also clear that nothing in that provision requires that the fee be based on use.
Accordingly, we need not analyze whether the fee imposed by the Ordinance is a valid user fee. However, this does hot mean that the unqualified term “fee” used in KRS 65.760(3) is unencumbered by reason or restraint. While-analogy to cases discussing user fees, service charges,’ or similar forms of statutory assessments may prove instructive, our analysis is not dictated by KRS 91A.510 or any Kentucky decision interpreting statutes that are not at issue here. As a matter of first, impression, the following analysis applies only to the nature and scope of fees authorized by KRS 65.760(3).

Fees Authorized Under KRS 65.760(3)

Fees authorized by KRS 65.760 must bear some reasonable relationship to the benefit received. This nexus is similar, but not necessarily identical, to that required by other statutory assessments, charges, and fees. See Kentucky River Authority, 932 S.W,2d at 376 (“The validity of special fee assessments and users fees depends on an analysis of the charge and the benefits received.”); Curtis v. Louisville and Jefferson County Metropolitan Sewer District, 311 S.W.2d 378, 382 (Ky.1958) (affirming property assessment that funded surface drainage project due to the “general improvement of conditions of health, comfort and convenience in the area....).”
Here, the 911 emergency service fee is levied upon occupied residential and commercial properties. In the narrow context of KRS 65.760(3), occupied properties are an exceedingly logical and practical object of the -fee- revenue authorized by that provision. ■" Common sense dictates that Campbell County residents engaged in either labor or leisure spend a significant amount of their time at residential and commercial properties located' within Campbell County. It naturally follows that demand for this 911 emergency telephone service derives significantly from residents’ occupation and use of those properties.
We must keep ever , in mind that these are safety and life saving services. Fire protection, ambulance assistance, law- enforcement, and other first responders are all critical to the well being of people who occupy properties covered by the ordinance in question. While the scope of benefits received from the 911 emergency telephone service is incapable of precise measure, it is uncontroverted that all citizens benefit from that service. Cf. Long Run Baptist, 775 S.W.2d at 524 (affirming service charge where the court determined that all property owners benefited from the service rendered). To assess payment upon only those citizens actually telephoning 911 is not, nor has, it ever been, the policy of our counties or our Commonwealth.
Even the old landline fee expressly outlined in KRS 65.760 would offend the Association’s overly restrictive interpretation requiring actual use of 911 telephone services. In fact, a system that is based *607 entirely on actual use would be insufficient to sustain this service. Fortunately, many, if not most Kentuckians go through life and never encounter an emergency requiring the use of the 911 service. Thus, accepting the Association’s interpretation of the word “fee” provided in KRS 65.760 tó mean “user fee” would require this Court to presume that the General Assembly intended an unpalatable and absurd result. This we cannot do. See Maynes, 361 S.W.3d at 924; '
We must clarify that the nexus required to sustain a fee imposed under KRS 65.760(3) need not necessarily be direct. Rather, a fee that bears a reasonable relationship to the benefit received is sufficient. This approach comports with the General Assembly’s specific intent to provide a functional system of fee based funding for one of the most vital services offered by our local governments. Therefore, we hold that the fee imposed by the County to fund this indispensable service is a constitutional and statutorily valid exercise of its authority,

Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Campbell Circuit Court.
All sitting. Abramson, Barber, Keller, and Noble, JJ., concur. Venters, J., dissents by separate opinion in which Minton, C.J., joins.

. Barber v. Comm’r of Revenue, 674 S.W.2d 18 (Ky. App. 1984).