VENTERS, J.,
DISSENTING;
I respectfully dissent. With candor only judges can fully appreciate, Counsel for the Campbell County Fiscal Court (Campbell County) acknowledged in his oral argument before this Court that fitting the “service fee” created by Ordinance 0-04-13 within the available statutory framework was like trying to drive a square peg into a round hole. The majority has opted, for better or worse, to chisel off the corners of the square peg so that what is in reality a flat-rate tax on real estate can be jammed into the round hole provided by statute for service- fees. The better approach would be to call out the so-called “service fee”-for what it is: a tax on real property ownership. The so-called “service fee” fits within none- of the criteria recognized for the imposition of a governmental fee and bears all the hallmarks of a tax. And, because it is a tax on property that is not assessed, on -an ad valorem basis, .it violates Section.' 174.-of the .Kentucky Constitution. . < •• •
A major premise of the majority opinion is that the ordinance does not impose a “user fee” as defined in KRS 91A.510, but is instead some other kind of “fee.” That will come as news to Appellee, Campbell County, since it argues in its brief that “[t]he Ordinance does not ¡create a ‘Property Charge,’ but a valid user fee that is in harmony with KRS 91 A.510-530.” (emphasis added.) Campbell County also says in its brief that it “chose to replace the Subscriber Charge [of its former Ordinance] with a user fee which, is one of four ways for funding the 911 service.” (emphasis added.) Appellee’s entire argument is predicated upon their claim that their 911 “service fee” is valid because it is a “user fee.” However, calling something a “user fee” does not-make it one.

A. The “service fee” assessed under Ordinance 0-04-13 is not a “fee.”

Fees properly assessed .by governmental entities are characterized as either regulatory and license fees, or user fees, I am not aware of any other kind of fee. Regulatory and license^ fees are paid by those who choose to engage in a state-regulated activity. Often, but not necessarily, the activity is commercial in nature, like engaging in a licensed profession or working *608 with a regulated material. Other regulatory license fees are imposed upon those who choose to participate in regulated'recreational activities, like hunting and boating. 84 C.J.-S. Taxation § 8 (2015) (“A ‘regulatory fee’ is an imposition that, funds a regulatory program-. Regulatory fees are authorized by the state’s police power to regulate- particular businesses or activities and serve regulatory purposes[.]”) (internal citations omitted). See Klein v. Flanery, 439 S.W.3d 107,114 n.6 (Ky.2014) (“[A] ‘tax’ in the strict sense of monies levied to meet the general expenses of government has been distinguished in a yariety of contexts from more particularized exactions, such as fines, user fees— tolls, for pxample — infrastructure assessments, or regulatory fees[.]”)
Campbell County’s 911 emergency service is not a regulatory program; it does not-police the practice of any commercial or recreational - activities. Annual -payment of the assessed fee does not entitle the fee-payers to participate in a regulated profesr sion or activity. Therefore, by -definition, the Campbell County 911 “service fee” is not a regulatory fee.
The other category of government fees is a user fee. That is what Appellees claim to have created in Ordinance 0-04-13. A “user fee” is a fee or charge “imposed by a local government on the user of a public service ibr the use of any particular service not also available from a nongovernmental provider.” KRS 91A.510 (emphasis added). Payment of the “user fee” entitles the payer to use the particular service. That is, "after all, the effect of the word “for” in the statutory definition. The fee is exchanged for the right to use the service. Typical examples of user fees are toll bridge fares and court costs,-but also included are things like the admission fee to a government-owned facility such as a public park or swimming pool; As reported in Corpus Juris Secundum, “A true fee benefits the party paying the fee in a manner not shared by other members of society.” 84 C.J.S. Taxation § 3.
Our case law teaches that the constitutional “validity of special assessments and users fees depends on an analysis of the charge and the benefit received.” Kentucky River Authority v. City of Danville, 932 S.W.2d 374, 376 (Ky.App.1996). “Assessments and fees charged without a relationship to a benefit received by the payor are arbitrary and capricious arid violate due process and the constitutional prohibition against the takirig of private property without just compensation.” Id. (citations omitted).
Appellees concede what the Majority asserts: “[I]t is uncontroverted that all citizens benefit from the [911] service,” Of course they do — access to 911 emergency service is universally available to everyone in. the community regardless'of whether they own real estate and pay the “service fee.” It equally serves pedestrians injured in vehicular accidents; persons threatened by domestic violence; victims of crime; anyone that needs an emergency medical response. Landowners paying the fee get no benefit not otherwise available to everyone. There is no relationship between the fee charged and the benefit received. Consequently, the “service fee” cannot be justified as a “user fee.”
Being neither a regulatory fee nor a user fee, the “service fee” created by Ordinance 0-04-13 is exactly what it appears to be: it is a tax-. There is nothing wrong or illegal about taxing real estate owners to pay for government services at a rate disproportionate to the benefit they receive. That is quite common; it is generally accepted, and éven expected. That is how Kentuckians pay for their school systems and public libraries; property taxes *609 also provide the general funding for running city and county governments. Paying for 911 service with a tax on real estate would be entirely appropriate provided it was done in compliance with Section 174 of the Kentucky Constitution, which provides: “All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this Constitution.”

B. Ordinance 0-04-13 imposes a flat-rate tax on property.

The “service fee” described-in Ordinance 0-04-13 has none of the attributes of a legitimate fee. Moreover, it has all of the indicia of a tax. Dickson v. Jefferson County Board of Education, 311 Ky. 781, 225 S.W.2d 672, 675 (1949) provides:
There is a marked difference between a fee in its true concept and a tax. As said in 51 Am.Jur., Fees, Section 12:
‘The distinction between a fee and a tax is one that is not always observed with nicety in judicial decisions, but any payment exacted by the state or its municipal subdivisions as a contribution toward the cost of maintaining governmental functions, where the special benefits derived from their performance is merged in the general benefit, is a tax.’
On the other hand, a fee is generally regarded as a charge for some particular service.,,. [T]he Legislature has the power to impose fees for official duties performed by coünty officers and to direct that the fees be paid into the State Treasury.
We noted in Klein that “[t]he classic ‘tax’ is ‘imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community[.]’ ” 439 S.W.3d at 114 n.6 (citation omitted). As described in Klein, the “service fee” imposed by Ordinance 0-04-13 is a tax.
Not only does Campbell County’s annual “service fee” for 911 service look and feel like a tax, it is actually assessed, billed, and collected as a tax. Just like any other tax on real estate, payers liable for the so-called “service fee” are identified by the Campbell County Property Valuation Administrator, which is Kentucky’s tax assessor. The charge is placed on the property tax bills by the county clerk in the performance of her duty under KRS 133.220(2) to. prepare a bill showing the taxpayer “the total amount of taxes due the state, county, school district, and any other taxing district for which the.sheriff collects taxes.” Then, the “service fee” is collected by the sheriff performing .his duty as the county tax collector. The 911 service fee is assessed by the tax assessor, billed by the tax billing office, and collected by the tax collector. :
In City of Bromley v. Smith, 149 S.W.3d 403 (Ky.2004), this Court did not flinch when we were confronted with a flat-rate assessment on real! property in ’ Kenton County to pay for “life squad and other nonfire-related emergency services.” Id. at 404. Despite the unquestioned value of the services provided to the citizens, we unanimously struck down the ordinance because it violated Section 174 of the Kentucky Constitution. City of Bromley holds:
The annual flat-rate .tax assessed per unit of real property and imposed for life squad purposes is not authorized under the Kentucky Constitution in the form that has been chosen fey the City. In Kentucky, local real property taxes must be. ad valorem, that is, based on assessed value. ■ The term “ad valorem” *610 literally means “according to worth.” A flat tax is unrelated to value. As correctly observed in Barber,[1] other than special assessments for municipal improvements and user charges for the provision of measurable services such as waste collection and sewer service, charges that may be based in part on the amount of wasté or water consumption which could be reasonably calculated to burden the system; all property taxes must be-based on assessed value or ad valorem. A flat-rate life squad tax is not based on value, and it 'cannot be deemed to be either a license fee, special assessment or user fee.' The taxes are of a type that is not recognized by Kentucky law. Consequently, they are invalid and unconstitutional. It is of interest to note that the legislature has specified an ad valorem tax as a method of financing emergency ambulance services in KRS 75.040.
Id. at 405-406 (emphasis added).
In Barber v. Commissioner of Revenue, .674 S.W.2d 18, 20 (Ky.App. 1984), the City of Silver Grove (which is in Campbell County) attempted to levy a “fire protection service charge,” which was in effect a one-time flat-rate tax on occupied property. The ordinance provided that the assessment would be added to the property owner’s ad valorem tax bill. The Court of Appeals struck the ordinance as an unlawful tax on real estate, stating: “The proper way [to fund such services] is to charge all real and personal property to be benefited by the fire protection with a rate times the assessed value of the property.” Id. at 21 (emphasis added). The assessment used to fund such services ’was thus held to be an illegal flat-rate tax; the circumstances here are identical to the Barber case, and we should follow the cogent assessment of the issue as charted in that decision.
CONCLUSION
The “service fee” involved here has none of the- attributes of a legitimate regulatory fee or user fee. When something looks like a duck, walks like a duck, and quacks like a duck, we can be certain of one thing: it is a duck. The Campbell County 911 “service fee” looks like a tax, it is assessed like a tax, and it is collected like a tax. It is a tax. Driving .square pegs into round holes is bad carpentry; skirting the Kentucky Constitution by calling a flat-rate tax on real estate a “service, fee” is bad law.
KRS 67.760 permits the Campbell County Fiscal Court to Finance its 911 emergency system by any of the following ways: “the levy of any special tax, license, or fee not in conflict with the Constitution and statutes of this state.” Campbell County’s chosen method of funding 911 emergency service violates KRS 67.760 because it conflicts with the Constitution. It is a tax imposed on real estate, and just like the taxes imposed in City of Bromley and Barber, it should be stricken because it violates the ad valorem requirement of Section 174 of the Constitution.
‘ Our role in these matters is not to whittle out a quick fix so that an invaluable public service can be maintained without exposing local officials to the unpleasant business of creating or increasing a tax. This Court’s function in the grand scheme of things is to point out the legal infirmity of the matter so that the legislative and executive branches of state and local governments can craft enduring solutions that protect, not only invaluable public benefits like 911 emergency services, but also the integrity of the law itself. Securing essential public services does not require citi *611 zens or political subdivisions to drive square pegs into round holes.
Therefore, I respectfully dissent.
Minton, C.J., joins.