RENDERED: JANUARY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0018-MR

WILLIAM CRAIG BURGIE                                                  APPELLANT


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE TIMOTHY KALTENBACH, JUDGE
ACTION NO. 22-CR-00037-002


COMMONWEALTH OF KENTUCKY                                      APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, EASTON, AND TAYLOR, JUDGES.

EASTON, JUDGE:  William Craig Burgie ("Burgie") appeals the judgment of the

McCracken Circuit Court after a jury convicted him of first-degree possession of a

controlled substance (methamphetamine), and possession of drug paraphernalia.

Burgie claims he was entitled to a directed verdict, was denied a unanimous

verdict, is entitled to a new sentencing phase, and should not have been ordered to

pay court costs.  We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

On the night of December 7, 2021, Trooper Eric West ("West") of the Kentucky State Police ("KSP") was patrolling the Melber[1] area in McCracken County watching for general traffic violations. West parked at a post office so that he could watch vehicles coming and going at a nearby four-way stop. West noticed a pick-up truck with expired registration tags at the four-way stop. Based on this infraction, West decided to pull the truck over and conduct a traffic stop. Burgie was the driver of the truck, and Rebecca Bellamy ("Bellamy") was the only passenger.

West obtained identifying information for both Burgie and Bellamy. West "ran" their information through a computer system to check for any issues. During this search, West learned the truck was owned by Burgie's father. West also learned Bellamy had an active arrest warrant from another county.

West thought Bellamy was intoxicated, so he first asked Burgie to exit the truck. Burgie complied. West asked for consent to search the truck, which Burgie granted. West quickly frisked Burgie to see if there were weapons on his person. West then asked Bellamy to exit the truck. West testified he removes women from vehicles quickly because they may hide contraband on their persons

---

[1] Melber is an unincorporated community on the line between McCracken and Graves counties.

in such a manner that it would not be appropriate for him to search. There was no female officer on the scene.

Bellamy confirmed her identity and was arrested. West testified he performed a limited pat down of Bellamy. He searched Bellamy's purse, finding a syringe. The syringe contained a residue that field-tested positive for methamphetamine. Bellamy was charged for possession of the methamphetamine-tinged syringe.

Deputy Jeff Hartman ("Hartman") of the McCracken County Sheriff's Department arrived at the scene to assist. West searched the passenger side of the truck while Hartman searched the driver's side. West found nothing else, but Hartman discovered a plastic baggie in the gap between the console[2] and seatbelt connection for the driver's side. This baggie contained a white crystalline substance that was consistent with methamphetamine. The baggie was placed in an evidence bag.

Hartman later testified about his extensive experience with those who possess drugs and their efforts to hide them. He said he often finds drugs and paraphernalia under the seat or between the possessor's seat and a middle console.

---

[2] The officers referred to this area as a console. We have one photograph of the truck interior, and we can see no place to store items in this middle area, which is what one might expect when referring to a console. The middle area appears to be designed possibly to serve as a narrow seat for a third person. When the top of this middle area is folded down, it could have a storage area and serve as an armrest for the driver and passenger.

-3-

He offered this without objection to explain why he searched the area where the drugs were found. Hartman surmised the baggie belonged to Burgie. It was found by his seat separated from the passenger's seat.

After the plastic baggie was found, Burgie said to Hartman that he did not want to go to jail and was willing to work as a confidential informant. Hartman relayed Burgie's statements to West. Hartman then had to leave the scene to respond to another call.

Burgie then proposed to West that he could assist law enforcement in locating individuals with warrants for their arrest. West replied he was not interested in such an arrangement, but he was interested in Burgie potentially helping him find illegal narcotics. Burgie agreed. For Burgie's protection, he was placed in handcuffs until Bellamy was removed from the scene. After Bellamy was taken to jail, Burgie's handcuffs were removed, and he was allowed to leave. No charges were brought against Burgie that night.

Deputy Larry Jones ("Jones") of the Graves County Sheriff's Office testified he knew Burgie, and that, from time-to-time, Burgie would send text messages to Jones. The day after Burgie's traffic stop by West, Burgie and Jones had the following text exchange:

> **Burgie:** Okay, so I got something for you. More of asking for advice, I guess. Okay look, last night I got stopped on some straight bull****, man. Okay, look I was driving my dad's truck last night, get pulled over by

a trooper. He pulls a bag of dope out of his pocket and says, 'Oh, this was by your seat, you're going to jail.' Who can I talk to about that bull\*\*\*\* that might actually help, because this particular guy has really just been trying to f\*\*\* me around for a minute.

**Jones:** Who was the trooper?

**Burgie:** West.

**Jones:** Gotcha. Man, I'm not sure, your attorney would be the best route.

**Burgie:** Nah, he was trying to get me to tell on someone, he didn't even charge me, he knew that he didn't find it in the truck.

**Jones:** You need to call KSP.

A few days after this text exchange, Jones ran into West at the Graves County Courthouse. West brought up his encounter with Burgie. Jones made a joke with West about planting drugs in Burgie's vehicle during this traffic stop. West asked Jones what he meant. Jones showed West the text messages from Burgie. Jones also sent West a screenshot of the text exchange. Perhaps understanding what this meant in terms of Burgie's actual desire to assist law enforcement, West immediately sought charges against Burgie.

The McCracken County Grand Jury indicted Burgie for first-degree possession of a controlled substance (methamphetamine), second offense, and possession of drug paraphernalia. The possession of methamphetamine charge was based on the methamphetamine found in the plastic baggie, while the possession of

-5-

drug paraphernalia was based on possession of the baggie itself. Burgie appeared before the McCracken Circuit Court for arraignment. Burgie pled not guilty to the charges. Burgie was determined to be an indigent person pursuant to KRS[3] Chapter 31 and was assigned conflict counsel by contract with the Kentucky Department of Public Advocacy ("DPA").

The circuit court conducted a one-day jury trial on October 12, 2022. Officers West, Hartman, and Jones testified on behalf of the Commonwealth. Trooper Eric Fields ("Fields") also testified about the separate chains of custody of the baggie of methamphetamine and the syringe. Fields explained he repackaged and submitted the evidence separately as the baggie of methamphetamine was for charges against Burgie and the syringe was for charges against Bellamy. Fields testified that a laboratory will only test a syringe if it is the only evidence for a criminal case. As the syringe was the sole evidence against Bellamy, it was tested.

The Commonwealth also called Haley Oliver, a forensic scientist specialist for KSP, as a witness. She performed forensic analysis on both the substance in the baggie and the residue on the syringe cap. She confirmed both tested positive for methamphetamine.

At the end of the Commonwealth's case, Burgie's counsel moved for a directed verdict, arguing the Commonwealth failed to prove Burgie had

---

[3] Kentucky Revised Statutes.

knowledge of any narcotics in his vehicle. In response, the Commonwealth argued they proved constructive possession of the narcotics by Burgie, as he was the driver of the vehicle, and the baggie of methamphetamine was found near the driver's side where he was. Further, the fact that additional narcotics evidence was found with a passenger Burgie knew could lead a reasonable juror to find that Burgie had knowledge of the baggie of methamphetamine in his vehicle. The circuit judge denied Burgie's motion for directed verdict, concluding a reasonable juror could find Burgie had constructive possession of methamphetamine and convict Burgie on that basis.

The sole witness for the defense was Bellamy. She testified that, on the night in question, Burgie was giving her a ride from Melber to Paducah. Bellamy brought along a baggie of methamphetamine and a syringe, but Burgie supposedly did not know this. The syringe was in her purse, and the baggie was in her hand. Bellamy could not explain why she had the baggie out in her hand rather than having it in her purse with the syringe. She hedged on when she had used the syringe. She even said she forgot the syringe was in her purse.

When Bellamy saw the police lights, she became scared, and "tossed" the baggie or just threw her hands up. She did not know where the baggie landed. She offered no explanation for why Burgie would not have seen the tossing of the baggie.

Bellamy confirmed she pled guilty to possession of methamphetamine and possession of drug paraphernalia. She explained that, when she pled guilty, she thought she was pleading guilty for possessing both the baggie containing methamphetamine, as well as the syringe with residue. She thought the charges against her and the charges against Burgie were identical.

After the conclusion of evidence, Burgie renewed his motion for directed verdict. The circuit judge again denied the motion and submitted the case to the jury. Burgie was convicted of first-degree possession of a controlled substance (methamphetamine) and possession of drug paraphernalia. The circuit court instructed the jury as to penalty as if this was Burgie's first offense, even though the jury saw the evidence of two prior offenses. The jury recommended Burgie receive the maximum three-year sentence.

At Burgie's sentencing, the circuit court probated his sentence. As part of Burgie's probation, the circuit court ordered him to enroll in and complete a long-term residential rehabilitation program that could last up to eight months. While fines were waived, the circuit court ordered Burgie to pay court costs in the amount of $200 within six months. There was no objection to the imposition of the court costs. This appeal followed. Burgie was allowed to file this appeal with

appointed counsel and without payment of costs because he was still indigent. KRS 31.120(1)(c).[4]

## ANALYSIS

Burgie argues the circuit court erred for the following reasons: (1) his motion for directed verdict should have been granted; (2) he was denied a unanimous verdict based upon an erroneous jury instruction; (3) he was assessed court costs despite being previously determined to be an indigent person by the court; and (4) he is entitled to a new penalty phase due to erroneous penalty instructions. We will address Burgie's arguments in that order.

## DIRECTED VERDICT

Burgie's first argument is that the circuit court erred by denying his motion for a directed verdict of acquittal. "When the denial of a properly preserved directed verdict motion is challenged on appeal, the standard of review is likewise whether, viewing the evidence in the light most favorable to the Commonwealth, any rational juror could have found all the elements of the crime." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 35 (Ky. 2011). "To defeat a directed verdict motion, the Commonwealth must only produce more than a mere

---

[4] A person who, after conviction, is sentenced while being represented by a public defender shall continue to be presumed a needy person, and the court, at the time of sentencing, shall enter an Order In Forma Pauperis for purposes of appeal without having to show further proof of continued indigency, unless the court finds good cause after a hearing to determine that the defendant should not continue to be considered an indigent person.

scintilla of evidence." *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (internal quotation marks and citation omitted).

Burgie asserts he was entitled to a directed verdict because the Commonwealth failed to prove he had constructive possession of methamphetamine. "Possession may be proven through either actual possession or constructive possession. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and intention at a given time to exercise dominion and control of an object, either directly or through others." *Deboy v. Commonwealth*, 214 S.W.3d 926, 930 (Ky. App. 2007) (internal quotation marks and citations omitted). "[P]roof that a defendant has possession and control of a vehicle is evidence to support a conviction for constructive possession of contraband found within the vehicle." *Burnett v. Commonwealth*, 31 S.W.3d 878, 880 (Ky. 2000), *overruled for other reasons by Travis v. Commonwealth*, 327 S.W.3d 456 (Ky. 2010).

In this case, it is undisputed that Burgie was driving his father's truck, and thus exercised dominion and control over the truck and its contents. Bellamy testified she had the baggie in her hand when stopped by West. Even though she was sitting right next to him, Burgie supposedly had no idea she had a baggie of methamphetamine in her hand. He also apparently did not notice her impaired state. Bellamy claimed she threw the baggie out of her hand, and the baggie

landed somewhere in the car. At trial, Bellamy demonstrated with a jerking motion with her raised hands. In other words, she did not make a targeted throw of the item.

The baggie just happened to make it over the console seat and fall to rest between the driver's seat and the console where police officers tend to look for concealed drugs because of the frequency of such a place being used for that purpose. A juror could reasonably reach the conclusion that Bellamy's testimony was incredible and illogical and designed to keep Burgie out of trouble.

A juror could also reasonably conclude that Burgie's desire to become a confidential informant after the narcotics were discovered was evidence of guilt. While Burgie did not testify as a witness, his prior statements were properly used against him and impugned his credibility. The statements included the claim of police misconduct by West of planting the drugs. This accusation is suspect when we consider that Hartman found the drugs, not West. Burgie's inconsistency about all this was contrary to the theory he presented at trial. At trial, instead of an officer planting the drugs, Bellamy tossed them perfectly to Burgie's side of the truck.

The jury in this case was not required to accept Bellamy's claim of sole possession nor was it required to believe the conflicting stories of evidence planted versus Burgie's implicit acknowledgment of his guilt when he offered to

help the police to avoid arrest. The location of the methamphetamine as found in the car was more than the required scintilla of evidence of Burgie's possession to sustain the jury's verdict.

Where there is conflicting evidence in a trial, jurors are free to believe and to disbelieve parts of evidence, including the testimony of each witness. *Reynolds v. Commonwealth*, 113 S.W.3d 647, 650 (Ky. App. 2003). "Credibility and weight of the evidence are matters within the exclusive province of the jury." *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999).

Burgie specifically contends "the Commonwealth relied heavily on Deputy Hartman's testimony to prove possession, where he said that it was habit for drug users to place their drugs in the area underneath their seat or between the seat and the center console." Burgie argues Hartman's testimony constitutes impermissible habit evidence pursuant to *Ordway v. Commonwealth*, 391 S.W.3d 762, 776 (Ky. 2013) (holding "a party may not introduce evidence of the habit of a class of individuals either to prove that another member of the class acted the same way under similar circumstances or to prove that the person was a member of that class because he acted the same way under similar circumstances"). We start by recognizing that Hartman never used the word "habit." Hartman described his own observations from his experience to explain his actions of where he looked for items.

-12-

Burgie did not make a contemporaneous objection during the trial regarding Hartman's testimony regarding "habits" of drug users. Since this is a new argument that was never presented to the circuit court and is now being argued for the first time on appeal, this Court need not address it. *See Jenkins v. Commonwealth*, 607 S.W.3d 601, 613 (Ky. 2020). Even as unpreserved argument, this does not present a situation of palpable error when all the evidence is properly considered in context.

Ultimately, we conclude there was sufficient evidence for a rational juror to conclude that Burgie constructively possessed the methamphetamine found by his seat. The circuit court did not err in denying Burgie's directed verdict motion.

**UNANIMOUS VERDICT**

Burgie's next argument is that he was denied a unanimous verdict based upon an erroneous jury instruction. Burgie asserts the jury instruction for possession of a controlled substance did not specify whether the jury believed he possessed the methamphetamine in the baggie, or the methamphetamine in the syringe. Burgie asserts the instruction allowed the jury to convict him for one crime based on two different instances of criminal activity.

Burgie concedes the unanimous verdict issue is unpreserved. He requests palpable error review under RCr[5] 10.26: "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

The jury instruction for possession of a controlled substance reads as follows:

## INSTRUCTION NO. 4

### (First-Degree Possession of a Controlled Substance – Methamphetamine)

You will find the defendant, William Burgie, guilty of First-Degree Possession of a Controlled Substance – Methamphetamine, under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about December 7, 2021, and before the finding of the Indictment herein, he had in his possession a quantity of methamphetamine;

AND

B. That he knew the substance so possessed by him was methamphetamine.

---

[5] Kentucky Rules of Criminal Procedure.

Not every error in jury instructions rises to the level of palpable error. *Miller v. Commonwealth*, 283 S.W.3d 690, 696 (Ky. 2009). "In all cases presenting an unpreserved error regarding a unanimous jury, the courts must 'plumb the depths of the proceeding' and scrutinize the factual idiosyncrasies of the individual case." *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023), *reh'g denied* (Sep. 28, 2023) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)). Only if the reviewing court can conclude "the [unpreserved] error is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process" will reversal be warranted. *Id.* The threshold for palpable review is that the error "should be so egregious that it jumps off the page . . . and cries out for relief." *Chavies v. Commonwealth*, 374 S.W.3d 313, 323 (Ky. 2012) (quoting *Alford v. Commonwealth*, 338 S.W.3d 240, 251 (Ky. 2011) (Cunningham, J., concurring)).

The evidence at trial showed Burgie was only charged with the possession of the methamphetamine contained in the baggie. Fields testified he ensured the evidence was separated and repackaged as the baggie of methamphetamine was for charges against Burgie and the syringe was for charges against Bellamy. Fields testified that a laboratory will only test a syringe if it is the only evidence for a criminal case – in this instance, Bellamy's case. In its closing

argument, the Commonwealth stated Burgie was not charged for possession of the syringe found in Bellamy's purse.

The jury instruction was not confusing. It did not identify the item in question by saying for example either the syringe or the baggie or both. If it had, then there might have been an issue with the instructions because there was no evidence of Burgie's knowledge of the syringe in Bellamy's purse. But that is not how the jury was instructed.

The testimony, evidence, and arguments clearly showed Burgie was charged with possession of methamphetamine in the plastic baggie, as well as the plastic baggie itself as paraphernalia. The case was not particularly complex, and it is more than unlikely that the jury was confused by the possession of a controlled substance instruction. *See Johnson*, *supra*, at 418. We find no error, and we do not believe there was a "substantial possibility" a different result would have resulted but for any unpreserved error, had there been one. *See id.*

## COURT COSTS

Burgie next argues the circuit court erred in levying court costs against a poor person such as himself. Burgie admits this issue is unpreserved, and thus again requests palpable error review under RCr 10.26.

The assessment of court costs against a convicted defendant "shall be mandatory . . . unless the court finds that the defendant is a poor person as defined

by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future." KRS 23A.205(2).

Burgie contends the assessment of court costs was erroneous as the circuit court had already declared him indigent, appointed him counsel, and allowed him to prosecute his appeal without the payment of costs and fees. KRS 31.110 authorizes the appointment of counsel for a "needy person" or "indigent person".[6] A needy person means "[a] person eighteen (18) years of age or older . . . who, at the time his or her need is determined, is unable to provide for the payment of an attorney and all other necessary expenses of representation[.]" KRS 31.100(5)(a).

However, being a "needy person" is not the standard for whether to waive court costs – instead, a defendant must meet the criteria of a "poor person." A "poor person" is defined as "a person who has an income at or below one hundred percent (100%) on the sliding scale of indigency established by the Supreme Court of Kentucky by rule or is unable to pay the costs and fees of the proceeding in which he is involved without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing." KRS 453.190(2).

---

[6] KRS Chapter 31, which concerns the DPA, uses the terms "needy person" and "indigent person" interchangeably. KRS 31.100(5).

Although the circuit court found Burgie to be an indigent person entitled to counsel, that did not foreclose the court from assessing court costs. *Nunn v. Commonwealth*, 461 S.W.3d 741, 752 (Ky. 2015). In *Maynes v. Commonwealth*, 361 S.W.3d 922, 929 (Ky. 2012), the Kentucky Supreme Court distinguished the "poor person" standard in KRS 23A.205 (exempting court costs) from the "needy person" standard in KRS 31.100 (authorizing counsel for criminal defendants). "[A] person may qualify as 'needy' under KRS 31.110 because he cannot afford the services of an attorney yet not be 'poor' under KRS 23A.205 . . . unless he is also unable to pay court costs without 'depriving himself or his dependents of the necessities of life, including food, shelter or clothing.'" *Id.*

This distinction has been upheld by later cases. In *Spicer v. Commonwealth*, 442 S.W.3d 26 (Ky. 2014), the defendant qualified as "needy" under KRS 31.110 and was appointed DPA counsel. The trial court also permitted the defendant to proceed on appeal *in forma pauperis.* Despite this, the trial court imposed court costs on the defendant.

The Kentucky Supreme Court upheld the imposition of court costs in *Spicer*, reasoning: "The assessment of court costs in a judgment fixing sentencing is illegal *only* if it orders a person adjudged to be 'poor' to pay costs." *Id.* at 35. The court added that "[i]f a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be an

indigent or poor person before imposing court costs, then there is no error to correct on appeal." *Id.* At sentencing, the defendant did not ask for court costs to be waived. Therefore, the Supreme Court concluded that, since there was nothing in the record reflecting the defendant's financial status (other than the appointment of DPA counsel and being permitted to proceed on appeal *in forma pauperis*), the trial court's assessment of court costs was valid. *Id.*

At his sentencing, Burgie never requested the circuit court to make a finding he was a poor person as defined by KRS 453.190(2). The circuit court made no such finding. Burgie only asked for more than the usual time to pay the costs and thanked the circuit court for giving him additional time. The circuit court did not err in assessing court costs.

## PENALTY PHASE

Burgie's final argument is that he is entitled to a new penalty phase due to erroneous penalty instructions. Burgie contends the circuit court erred by not requiring in the penalty instructions that the jury find Burgie guilty of first-degree possession of a controlled substance, **second offense**. The penalty instruction for first-degree possession of a controlled substance did not require jurors to find this was Burgie's second offense.

Before the penalty instructions were read to the jury, counsel for Burgie informed the circuit court that the jury should find this was his second

-19-

offense for first-degree possession of a controlled substance. The judge overruled the objection of Burgie's counsel as the penalty for possession of a controlled substance was the same regardless of whether it was Burgie's first or second offense or more for that matter.

Pursuant to KRS 218A.1415(2)(b), a defendant guilty of a first or second offense of first-degree possession of a controlled substance may be subject to deferred prosecution or presumptive probation in lieu of incarceration. This does not affect the sentence fixed by the jury in such cases. Burgie argues that, should he be convicted of first-degree possession of a controlled substance in the future, he would no longer benefit from the preferred alternatives of deferred prosecution or presumptive probation. Burgie then believes it was necessary for a jury to find his status of a second offense.

This is not a situation where the status of a second offense impacts the range of penalty for the conviction. An example of this impact can be seen with driving under the influence offenses. In Burgie's case, the penalty range remained the same. The difference as it applied to Burgie was just about whether probation remained a presumed disposition after conviction.

We see no error and no prejudice to Burgie. Burgie should not have benefitted from the alternatives available only for first and second offenses. Yet he

received that benefit. Burgie is complaining about a benefit he received because he was not treated as being found guilty of a third offense as he could have been.

During the penalty phase, the Commonwealth introduced certified copies of Burgie's two prior convictions for possession of a controlled substance. If Burgie is convicted of possession of a controlled substance again, there would be three prior possession convictions for the Commonwealth to potentially introduce against Burgie in the penalty phrase. That could make a difference in sentencing alternatives for the jury to know about when they set the penalty, although it would not change the penalty range.

Given the lack of any difference of penalty to be assessed by a jury for first and second offense for this crime, even if the penalty instruction was technically erroneous, it would be a harmless error as it did not substantially sway the verdict in this case. *See Allen v. Commonwealth*, 395 S.W.3d 451, 467 (Ky. 2013). The jury knew how many possession convictions Burgie had. It made no difference for the jury's decision of how many years to fix within the penalty range. Burgie received probation, presumptive or not, and can claim no prejudice resulting from his sentence.

## CONCLUSION

For the reasons previously indicated, the judgment of the McCracken Circuit Court is AFFIRMED.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Shannon Dupree
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

J. Grant Burdette
Assistant Attorney General
Frankfort, Kentucky